GARDEPHE

1  Brian Burke, *Pro Per*
2  145 EAST 23RD STREET APT. 4R        18 CV    4496
   NEW YORK, NY 10010
3  646-434-8513

4

5

6                UNITED STATES DISTRICT COURT

7          FOR THE SOUTHERN DISTRICT OF NEW YORK

8

9
   BRIAN BURKE, Plaintiff,    ) Case#
10                            )
   vs.                        ) COMPLAINT AND AFFIRMATION
11                            ) JURY TRIAL DEMAND
12 VERIZON COMMUNICATIONS,    )
                              )
13 INC., HOUSING & SERVICES,  )
14                            )
15 INC., KENMORE HOUSING

16 DEVELOPMENT FUND
17
18 CORPORATION, KENMORE

19 HOUSING CORPORATION,
20
21 KENMORE ASSOCIATES, L.P.,

22 NEW YORK CITY TRANSIT
23
24 AUTHORITY, NEW YORK CITY

25 HEALTH & HOSPITALS

26 CORPORATION(BELLEVUE), NEW

27 _____

28

                    COMPLAINT AND AFFIRMATION

                    JURY TRIAL DEMAND - 1

YORK CITY POLICE

DEPARTMENT, NEW YORK CITY

FIRE DEPARTMENT, RYAN

CAMIRE L.C.S.W., CITY

UNIVERSITY OF NEW YORK,

TRANSPORT WORKERS UNION

LOCAL 100, MADELINE

O'Brien, M.D., JOHN/JANE

DOE, *ET AL.*,

                    Respondents

_____

**INTRODUCTION**

I declare, certify, verify, and state under penalty

of perjury that the foregoing is true and correct.

Executed on MONDAY, May 21, 2018 ~~_____~~ /S/:

This is an action to remedy the rights of Brian

Burke, a 17[1] year employee of New York City Transit and

_____

[1] It is acknowledged that NYCTA sent plaintiff a strictly
Retaliatory (due to the injury defendants caused and Whistle-
Blowing/Protected Activity) "termination from probation" letter
in May 2016 in violation of Contract, Civil Service Law and
Precedent before Contract Arbitrator and EDNY Judge, using a

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 2

28+ year Tenant of 145 East 23rd Street apt. 4R NY, NY,
Patient of Bellevue Hospital (under World Trade Center
Health Program), *etc.,* under violations of 42 U.S. Code
§ 1983, Federal and New York Civil R.I.C.O.,
Defamation, Defamation *per se,* (intentional/negligent)
Medical Malpractice, Fraud, Theft, Tortious
Interference With Prospective Economic Advantage,
Federal, NY State, NYC False Claims Act(s), New York
*City/State Human Rights Law(s),* Retaliatory Termination
and Retaliatory Attempted Eviction, NY State Civil
Service Law, HIPAA, Americans with Disabilities Act,
ongoing NYCTA/TWU Local 100 Employment Contract
Violations, and/or Conspiracy to Commit same, *etc.,* but
not limited to.

## JURISDICTION & VENUE

This Court has Jurisdiction pursuant to the
following Statutes; 28 U.S.C. *§ 1331, 28 U.S.C. § 1343*
and *28 U.S.C. § 1367.* Venue is appropriate in this

Forged/False Instrument for Filing without Agreement
Consideration or Performance.

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 3

judicial district as the events that gave rise to this Complaint occurred in this district.

## JURY DEMAND

A jury trial is demanded under the Seventh Amendment to the Constitution of the United States and Fed. R. Civ. P. 38.

## PARTIES

Plaintiff is a 56 year old citizen of the United States, 17 year *Train Operator/Station Agent for the* New York City Transit Authority (hereon in NYCTA). He has resided in New York County, New York for over thirty years, has never been arrested or charged with any crime and has been regularly and randomly drug and alcohol tested as recently as 03/11/2015.

## *Qui facit per alium facit per se*

NYCTA is the employer at issue. NYCTA is a public entity pursuant to 42 U.S.C *$12131, etc.* NYCTA resides at 2 Broadway, New York, NY within this Court's Jurisdiction. NYCTA receives federal funds.

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 4

VERIZON COMMUNICATIONS, INC., HOUSING & SERVICES, INC., KENMORE HOUSING DEVELOPMENT FUND CORPORATION, KENMORE HOUSING CORPORATION, KENMORE ASSOCIATES, L.P. (hereon in Verizon Defendants, or Verizon) are the putative owners (see DOB website and attached 990 page) of 145 East 23rd Street, New York, NY 10010 (a.k.a. 143-147). It is acknowledged that Petitioner has, and does, contend that the alleged, no consideration, 'transfer' *of deed, from The People of the United States to* Verizon, etc. was/is null and void for violating federal statute requiring an auction, and lack of correct notarization of alleged signature of deed, if that was the proper person to perform said (illegal) transfer (by a Mr. Burke who is not Plaintiff).

The New York City Police Department (NYPD), Fire Department(FDNY), Health & Hospitals Corporation (H&H or Bellevue), City University of New York (CUNY), Ryan Camire, Licensed Clinical Social Worker (in February 2014 at Bellevue Mobile Crisis Unit, now CUNY), Dr. Madeline O'Brien, M.D. (previously Bellevue, now

Lincoln Hospital), *et al.*, were complicit, to varying degree, with NYCTA and Verizon in the Depravation of Rights Under Color of Law, Retaliatory, unlawful, contract violating termination, Defamation, Medical Malpractice, *etc.*, causing proven injury to Plaintiff, threatening unlawful Eviction/Removal from lawful rent stabilized home of 28+ years (under Color of Law).

### DEPRAVATION OF RIGHTS UNDER COLOR OF LAW

1.   On December 7, 1989, Petitioner moved into 145 East 23rd Street, as a lawful permanent tenant, with the assistance of MFY Legal Services (now MFJ). The property was at the time considered an SRO controlled by NYS Rent Stabilization Law.

2.   In approx. 1991 Tenant Brian Burke and Landlord/Shell Company (Jude Corporation, owned in whole by **Trường Đình Trần**, suspected of Heroin/Opium Trafficking in South East Asia during Vietnam Conflict and

after) appeared in NYC Housing Court over
alleged 'non-payment' and actual Warranty of
Habitability and Diminution of Services.
Tenant was prevailing party, and, on
Information and Belief, added to serial
"Blacklists" see
https://www.nytimes.com/2016/08/17/nyregion/
new-york-housing-tenant-blacklist.html and
*https://www.npr.org/2014/12/14/367833532/ten*
ant-blacklist-can-haunt-new-york-renters-
for-years

3.   In 1994 the Federal Government necessarily
assumed control/title of property, due to
criminal activity/hazardous conditions
known/initiated by Mr. Tran. See *UNITED*
*STATES of America v. ALL RIGHT, TITLE AND*
*INTEREST IN REAL PROPERTY AND APPURTENANCES,*
*thereto known as 143-147 East 23rd Street, New*
*York, New York, Listed as Block 879, Lot 27, which*

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 7

*includes the Kenmore Hotel, Defendants, Jude Hotel Corporation, Claimant- Appellant.*77 F. 3d 648

4.      Management of subject property was lawfully undertaken by U.S. Marshal's Service and Managing Agent Esquire Management. Many tenants engaged in crime, harassment, etc., were evicted, along with (former) owner. Plaintiff, who was never charged with, *accused of, or engaged in unlawful conduct,* (has never been arrested through today), remained a tenant in good standing.

5.      Kenmore Housing Development Fund Corporation was established. Normally, an HDFC[2] is founded to allow the existing tenants to purchase their apartment or 'Co-op' the building, in the interest of tenants. Instead a secret (illegal) *quid-pro-quo* (on

---

[2] "Through a "tenant petition" process, residents are able to choose whether to remain renters or become owners." https://www.habitatmag.com/Publication-Content/2008/2008-June/Featured-Articles-from-Our-Print-Magazine/HDFC-Low-Income-Affordable-Co-ops, not done.

information and belief) was performed illegally transferring subject property to the wealthiest Corporation in New York, Verizon. Verizon paid nothing for the property and allegedly put in 8 figures for a Major Capital Improvement that was never registered or properly permitted or licensed. Those 8 figures were immediately 'deeded' *back to Verizon as a dubious* 'tax credit' and the money itself mostly stolen by H&S, Inc. principles (including convicted Drug Trafficker Larry Oaks).

6.  It is acknowledged that Verizon Corporation, Inc. hired Housing & Services, Inc. to act as their[3] 'Managing Agent', presumably subject to removal for malfeasance, misconduct or perhaps no reason at all.

---

[3] Verizon owns, undisputed, 99.9%[*sic*] of listed shell 'owner' (no employees, *etc.*) Kenmore Associates, L.P., i.e. Verizon is the definitive 'Beneficial Owner' as a matter of law, i.e. actual 'Landlord' (until deed transfer is made null and void).

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 9

'Managing Agent' Housing & Services, Inc.
has continuously engaged in said willful,
intentional (with scienter) unlawful,
harmful, dangerous, fraudulent, *etc.*,
misconduct since. Petitioner has previously
attempted to inform the 'Beneficial Owner'
(Verizon CEO, etc.) via email, snail mail,
phone, *etc.*, of this malfeasance.

7.    *Plaintiff acknowledges engaging in*
litigation with Verizon's Shell Company for
most of this century. Petitioner, *pro se*,
was the prevailing party, including before a
jury, and in a sealed (NDA) Federal case.

**8.**    In retaliation[4] for Plaintiff attempting to
contact/inform the listed 'Beneficial Owner'

_____

[4] Section 1983 is an important means of redress for
constitutional violations committed not only by state government
officials, but also by non-state actors, such as private
individuals and federal officials. Indeed, the statute is known
as the "Ku Klux Klan Act" because one of its primary purposes
was to provide a civil remedy against abuses that were being
committed in southern states during the Reconstruction era,
especially by private organizations such as the Ku Klux Klan.
See *Monroe v. Pape*, 365 U.S. 167, 174-76 (1961). The Supreme
Court has consistently held that non-state actors can, under

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 10

of the subject property of criminal activity
by their employees/contractees (H&S,I),
Verizon, via employee of sub-agent H&S,I
Francesca Rossi L.C.S.W., ordered/instructed
Bellevue Hospital Mobile Crisis Unit to
perform witting, intentional
Defamation/Defamation *per se*/Medical
Malpractice (which was done) and attempted
*to have Plaintiff removed from home without*
court order, cause, probable cause (in a
corrupt misuse/attempted
malpractice/maladaptation of NYS Mental
Hygiene Law/Practice (see **Adrian**

certain circumstances, engage in conduct under "color of State
law," and may be subject to liability under section 1983 where
they "act jointly" or conspire with state government officials.
See, e.g., *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*,
531 U.S. 288, 296 (2001); *Tower v. Glover*, 467 U.S. 914, 919
(1984); *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); cf. *United
States v. Price*, 383 U.S. 787, 794 (1966) (holding that, for
purposes of finding liability under the criminal law analogue of
section 1983, 18 U.S.C. § 242, private individuals acting
jointly with state officers engage in conduct "under color" of
state law)

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 11

**Schoolcraft,v. City of New York, et al., 10 Civ. 6005 (RWS)**), see also First Amendment.

9.  On February 7, 2014[5] at approximately 10-1030am Mr. Ryan Camire, LCSW knocked on Petitioner's door (4R) while he was preparing for work (as a Safety Sensitive Civil Servant/Train Operator). There was no prior (or to this day) call, email, letter, *appointment*, *requirement*, *need*, *etc.*, *from* the Bellevue Mobil Crisis Unit. Apparently, the first words I stated were "I do not require your services". Of course, as petitioner will show, "your" (i.e. Ryan Camire/Bellevue Mobile Crisis Unit) services, in violation of Hippocratic Oath/Medical Ethics (on Information and Belief Mr. Camire (and Ms. Rossi), are licensed medical professionals bound by

---

[5] Petitioner will request the august District Court 'Toll' the acknowledged Statute of Limitations for both Medical Malpractice and Defamation/Defamation per se under Disclosure Rule and relevant case law.

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 12

same) were performed only for Verizon
Defendants to establish (unlawful, Due
Process Clause Violating) "probable cause"
to kidnap/remove Tenant/Civil Servant in
order to (illegally) evict/terminate from
employment. Nevertheless, familiar with
Adrian Schoolcraft case (and others),
Petitioner recorded a brief "evaluation"
*with Mr. Camire, in order not to be*
removed/tased/arrested/drugged that day,
*etc.,* for this clearly malicious,
unwarranted, retaliatory (for Protected
Activity) 'swatting[6]'. While, prior to
Discovery, Petitioner cannot ascertain the
exact relationship between Ms. Rossi, LCSW
and Mr. Camire, LCSW ('dating'?. Friends,
former students), it is clear Mr. Camire put
his(and yes Ms. Rossi's) license, employment

---

[6] https://www.cnn.com/2018/04/13/us/police-no-charges-
swatting-death/index.html

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 13

and liability on the line. Clearly

conferring before, during and after the

'evaluation' with his actual

client/'patient' Ms. Rossi, he proceeded to

commit DELIBERATE MALPRACTICE/DEFAMATION

(*PER SE*) in order to 'do a solid' in helping

to strip this law abiding Tenant/Civil

Servant of ALL CONSTITUTIONAL RIGHTS (see

*Defendant's favorite, and only case law on*

their behalf[7]). Petitioner has medical

documents from Bellevue Hospital delineating

---

[7] **Dred Scott v. Sandford**, 60 U.S. (19 How.) 393 (1857)"
[Tenants/Civil Servants engaged in Protected Activity] had for
more than a century before been regarded as beings of an
inferior order, and altogether unfit to associate with the
[Licensed Clinical Social Worker] race, either in social or
political relations; and so far inferior, that they had no
rights which the [LCSW/Landlord/Employer] man was bound to
respect; and that the [Whistle-Blower] might justly and lawfully
be reduced to slavery for his benefit. He was bought and sold,
and treated as an ordinary article of merchandise and traffic,
whenever a profit could be made by it. This opinion was at that
time fixed and universal in the civilized portion of the
[LCSW/Landlord/Verizon/NYCTA] race. It was regarded as an axiom
in morals as well as in politics, which no one thought of
disputing, or supposed to be open to dispute; and men in every
grade and position in society daily and habitually acted upon it
in their private pursuits, as well as in matters of public
concern, without doubting for a moment the correctness of this
opinion.

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 14

their concerted/actionable/deliberate

Medical Malpractice/Defamation, which wound

up creating deliberate, successful

Interference with Prospective Economic

Advantage (defendants got plaintiff fired

for Protected Activity). Petitioner will

request this same Medical 'psychological'

Documentation be submitted under seal or

*heavily redacted, as per HIPAA, etc.*.

10.   As to the deliberately false

'diagnosis'/Defamation/Malpractice by Mr.

Camire/Ms. Rossi (apparently a

duet/collaboration) LCSW, and as required in

NYS Case Law Re: Defamation, within 11 page

"Bellevue Hospital Center Chart Review

Print": a) on page one "Consenting Party :

patient consents or involuntary treatment".

As suspected, at the time, if

Plaintiff/"Patient" did not consent it would

have ended in involuntary commitment UNDER

COLOR OF LAW. B) page 2 "WM with PPH of

psychosis, delusions, 1 prior admission in

his 20s" which, other than the WM (White

Male) was perfectly false, without evidence

or contradictory evidence, malicious,

defamatory, defamatory *per se*, intentionally

injurious, intentional malpractice, *etc.*.

Petitioner notes the prior clause was false

"*employed as an MTA Train Conductor*"

(Petitioner was an NYCTA Train Operator)

which, while in and of itself is not

damaging goes to Mr Camire's

indifference/prejudice/incompetence. The

second page prominently references the

undisputed attempt by Petitioner (Protected

Activity) to "Petition the Government for

redress of grievances" via email and

Defendants claim this First Amendment Act

grants them lawful jurisdiction to

potentially deprive Tenant/Civil Servant of

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 16

all Civil Rights, under Color of Law, while

acknowledging it contained NO THREAT TO

ANYONE, only a lawful request Verizon

refrain from their own escalating criminal

conduct, admittedly informing

government/elected officials of same (i.e.

Whistle-Blowing[8]).

11.    As far as the deliberately False

*Defamation/Defamation per se/Medical*

Malpractice on page 3: a) "Per records,

patient has 1 admission for psychosis when

he was in his 20s (Info provided by

sister)." Petitioner can only state, THIS IS

---

[8]DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS
FIFTH EDITION page 20 "A mental disorder is a syndrome
characterized by clinically significant disturbance in an
individual's cognition, emotion regulation, or behavior that
reflects a dysfunction in the psychological, biological, or
developmental processes underlying mental functioning. Mental
disorders are usually associated with significant distress or
disability in social, occupational, or other important
activities. An expectable or culturally approved response to a
common stressor or loss, such as the death of a loved one, is
not a mental disorder. Socially deviant behavior (e.g.,
political, religious, or sexual) and **conflicts that are
primarily between the individual and society are not mental
disorders** unless the deviance or conflict results from a
dysfunction in the individual, as described above."[emphasis
added]

BRUTALLY, INTENTIONALLY DAMAGINGLY

FALSE!!!!!! In a phone conversation with

Petitioners only Sister, this deliberate,

defamatory falsehood was tricked out. She

thought she was discussing her only son, who

has been diagnosed on Autism Spectrum, and

not Plaintiff, for whom SHE HAS/HAD NO

MEDICAL INFORMATION! This conversation

*violated HIPAA and was additionally intended*

to Divide and Rule this "patient" by

creating intentional, malicious, interfamily

friction. Petitioner was additionally the

victim of Identity Theft by Verizon

Employees and that ID was apparently used in

2000 for some individual treated for a

Hernia (Petitioner had/has no Hernia and

never was treated by Bellevue prior to 2016

WTC Health Program appointment).

12.    On page 4. "disheveled" Petitioner had just

woken up (working pm/evening shifts to 11pm)

in order to get required rest for safety
sensitive occupation and prior to
shower/dressing. And "appears unkempt and
disheveled" (same answer). Under "Thought
Content: Persecutory delusions, Paranoid
ideation" and "Patient is very paranoid and
believe [*sic*] he is persecuted from several
areas." Mr. Camire LCSW, appears comically
un-self-aware, *that he is engaging in the*
very conduct (i.e. 'persecution'/Depravation
of Civil Rights Under Color of Law (1983)))
that would naturally engender being "very
paranoid", see
https://en.wikipedia.org/wiki/Political_abus
e_of_psychiatry_in_the_Soviet_Union[9] And the

---

[9] The "anti-Soviet" political behavior of some individuals —
being outspoken in their opposition to the authorities,
demonstrating for reform, and writing critical books — were
defined simultaneously as criminal acts (e.g., a violation of
Articles 70 or 190-1), symptoms of mental illness (e.g.,
**"delusion**[emphasis added] of reformism"), and susceptible to a
ready-made diagnosis (e.g., "sluggish schizophrenia"). Within
the boundaries of the diagnostic category, the symptoms of
pessimism, poor social adaptation and conflict with authorities

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 19

real reason for this terror "Impulsively
sends emails to staff, public officials re:
perceived mistreatment". Q.E.D. What does
"Impulsively" equal? There was only one
email at the time. This would not seem to
lead to this Defamation. If one, admittedly
un-liked, email is "Impulsive", what is two?
Prison? Worse? For telling the truth[10]? B)
"*Judgment: Judgment is fair [true] but
continues to send emails and avoid
suggestion of treatment.*" The gist/demand,
that Plaintiff cease and desist (not the
criminal Verizon Defendants) in conduct that
they (correctly) see does not serve their
interests as Slavemaster/Corrections/Parole
Officer/Mafia/RICO, i.e. to engage in First
(and other Amendments) Amendment Protected

were themselves sufficient for a formal diagnosis of "sluggish
schizophrenia."

[10] Petitioner admittedly made two *de minimis* errors as to
the year, but not the month/day of two of Verizon's Burglaries
in 4R.

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 20

Activity. Full Stop. C) "Suicide Risk Factors : <u>Impulsive or Reckless </u>behavior" and "Violence Risk Factors : <u>Paranoid delusions or perceived threat</u>" apparently believing, and having boxes of evidence of, Verizon attempting to unlawfully evict and make homeless Plaintiff must be seen as friendly, or else be stripped of all Civil *Rights*.

13.   Page 5 gets interesting, to the real 1983 (and RICO) violating Malicious Medical Malpractice/Defamation/Depravation of Rights Under Color of Law. First Mr. Camire, LCSW acknowledges meeting with his friend/colleague/co-conspirator/depriver of Civil Rights (Under Color of Law) Ms. Rossi LCSW. To "discuss the referral [from Verizon] information and review a copy of the email sent by the patient (copy of said email is in the chart for review). Ms. Rossi

indicates the patient has been a resident at

the Kenmore since 1989 [true], and despite

no known history of mental illness

[absolutely true, admitting their concerted

corruption], the patient has a long history

of paranoid ideation and delusion

surrounding the Kenmore and other

institutions." "Patient is currently in

$70,000 of rent arrears [false] and although

legal steps have been taken in order to

evict the patient[yet absolutely no reason

to be 'paranoid'!!] or force a judge

[certainly this august Court might be

interested in this] to garnish his wages

[?], none have been successful." The last

clause is absolutely correct, and the reason

we are, again, in Court! Defendants

acknowledge they have tried and failed all

lawful means and now avail themselves of

ongoing Predicate RICO illegal means, Under

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 22

has a complex delusional system involving the building staff and owners, and how they are defrauding the State of New York and the taxpayers." Mr. Camire, LCSW, on Information and Belief, not an Attorney, appears to employ "begging the question[12]" logical fallacy [would that itself be Delusional, i.e. Projection?], as well as performing an *ex post facto* cover-up/threat *regarding* exposing the undisputed facts delineated in the email. That makes this Public Corruption/Theft of Honest Services and Conspiracy to perform same via Intentional Medical Malpractice/Fraud/Defamation. And later "Patient was challenged on his delusions a few times during the interview and he was not responsive to intervention."

---

[12] **Begging the question**, sometimes known by its Latin name *petitio principii* (meaning assuming the initial point), is a logical fallacy in which the writer or speaker assumes the statement under examination to be true. In other words, **begging the question** involves using a premise to support itself.

Begging the question again, apparently the

"Patient" was required to state 2+2=5 and

mean it, or else, see Part One, Chapter

Seven of the book **1984**[13]. Also mentioned is

Petitioner's esteemed Uncle, Francis

Broucek, M.D. a renowned Menninger trained

Psychiatrist, graduate of the Topeka

Institute for Psychoanalysis, former

*Professor of Medicine at the University of*

Kansas and author of several books on the

subject. This Cv would seem to outweigh the

alleged, or at best overworked/overused

"credentials" of Mr. Camire/Ms. Rossi (on

Information and Belief they earned no more

than a Masters in Psychology),

accredited/unaccredited? From where? Which

they have maliciously employed no

differently than those Soviet era

---

[13] See also Lord Acton, the British historian, who said: "All **power** tends to corrupt; absolute **power corrupts** absolutely."

Psychiatrists or the PHDs at Abu Ghraib[14],
or Dr. Mengele or Dr. Nassar. Then Mr.
Camire incredibly contends "Patient denied
legal history" after extensive disclosure
that it was in fact discussed. Pure fiction
and Medical Malpractice of the worst
order/Defamation/Defamation *per se*.

15.    On page 7 (of 11) the intentional
       *Defamation/intentional Medical Malpractice*
       continues. "and despite his delusions and
       bizarre behavior at times,…" more begging
       the question illogical intentional
       falsehoods/Malpractice/Defamation. And "All
       [who are "all"?, the Royal 'We[15]'?] are
       currently in agreement that although the
       patient continues to exhibit bizarre
       behavior at times 2/2 delusional

---

[14] https://qz.com/462911/when-american-psychologists-use-
their-skills-for-torture/
[15] The use of "we" instead of "I" by an individual person,
as traditionally used by a sovereign. "Queen Victoria once
remarked, with British understatement, "we are not amused.""

Disorder,…"And the most devastating

Defamation/Medical Malpractice and the

reason Ms. Rossi 'swatted' the

Petitioner/"patient" in the first place, and

why we are here "Ms. Rossi asked

specifically if there is any need to discuss

the situation with his employer (the

MTA)[actually the NYCTA] as the patient is a

*Train Conductor [false, a Train Operator]*.

As there is no current cause for concern of

the patient harming self or others [then why

the call and the deliberately false

"diagnosis", to justify the visit??], there

is no justification for violating the

patient's confidentiality by discussing this

with the MTA. Patient has been gainfully

employed without incident in this position

for 14 years. Ms. Rossi was encouraged,

however, to continue to monitor the patient

**and his communications closely**[emphasis

added] in order to determine if there are any specific threats made to self or other commentary intimating potential for self-harm." And next "Axis I : Delusional disorder"[16] and "Dx(es) for Presnt [*sic*] : Delusional disorder" next "Proplem(s) : : LCSW[17] : Delusional Disorder, Rent Arrears" and finally, for this page "Assessment/Plan (WP) : A: 52 *year old WM domiciled at the*

---

[16] "Delusional disorder is one of the less common psychotic disorders, in which patients have delusions but not the other classical symptoms of schizophrenia (thought disorder, hallucinations, mood disturbance or flat affect)." So called Delusional Disorder is incredibly rare "One to 2 per cent of mental health hospitalizations and only 0.001 to 0.003 per cent of first-time psychiatric admissions are due to delusional disorder (Kendler, 1982)." This is one reason (other than additional Defamation) to accuse Plaintiff of the false prior admission. As can be seen .001 to .003 percent of first-time psychiatric admissions (or Diagnosis) would constitute one to three **out of every hundred thousand psychiatric admissions**, i.e. this Defamation/"diagnosis"/Malpractice is not only intentionally false and consistently contradicted throughout the false malicious 'narrative' but would be one for the medical books, if it were not.

[17] "We", (i.e. the two LCSW's), Mr. Camire and Ms. Rossi, acting in concert/collusion to deny Plaintiff his Civil/Constitutional Rights, Under Color of Law, appear to agree with Petitioner/'Patient" that these two LCSWs are the actual sum total/cause of Patient 1663232's "problem(s)" as a statement against interest.

Kenmore with symptoms consistent with delusional disorder."

16.    Page 8 appears to have nothing Defamatory, but clearly discloses that the "patient" was not informed of their malicious, mendacious, intentionally fraudulent/injurious false/Defamatory/Medical Malpractice "diagnosis". I wonder why. That is the *reason for the tolling request under* Disclosure Rule, this was not disclosed (other than to Employer).

17.    Page 9 (of 11) A Clinical Psychiatrist, Madeline O'Brien, MD, acknowledges never seeing talking to or discussing the secret "diagnosis" by Mr. Camire and Ms. Rossi. Nevertheless she accepts their inconsistent, false, malicious narrative as gospel, doubling down on the same, sight unseen. "Patient sent a very psychotic lengthy email…." "Patient has a very systematized

delusional system…" "patient has a long history of paranoid ideation and delusions…." Wildly actionable, unconstitutional, Defamatory, Defamatory per se, Medical Malpractice, all done in secret. Who was this "diagnosis" supposed to assist? The public? Ms. Rossi/Verizon? Time for some Discovery Depositions!!

18.  *Page 10 "[petitioner] is really seeking* legal interventions which would verify his delusional beliefs…" and again, after discussing numerous court actions Dr. O'Brien states in parroting of Mr. Camire "patient denied legal history" are they referring to criminal convictions (or arrests), for which Petitioner admittedly has none. How about the Defendants?

19.  Page 11 of 11 again from Dr. O'Brien "Ms. Rossi understood that he could not be transferred to a Psych ER against his will

[must have been disappointing to adversary Ms. Rossi, acting under Color of Law], but raised the question as to whether his employer needed to be notified of his delusions---he has worked for fourteen years without incident and he must have annual PE, random drug testing and vision screening and he is still employed. It would neither be *her role or that of the MCU at this juncture* to contact employer [and yet someone, presumably Ms. Rossi, did]. Patient does not at this time pose a threat of serious physical harm to himself or to others, , there is no justification for violating the patient's confidentiality by discussing with the MTA. Patient does need to be closely monitored [but presumably is "delusional" about being closely monitored?]-**although patient's with his type of delusional system usually flood the courts and seek legal**

**vindication**[18][emphasis added]-patient could

escalate [unlike Verizon?] if he becomes too

stressed or he feels…."

20.    Regarding Defamation/Malpractice in the

documents (18 pages) generated by Bellevue

from the sole actual medical appointment

(under World Trade Center Health Program

auspices and jurisdiction) on June 14, 2016,

*we will try to be more succinct.* Page 1,

"Developmental History : ….. As per chart,

reports of a psychiatric hospitalization

when pt was in his early 20s." False

injurious Defamation/Defamation per

se/Medical Malpractice. And "Past

Psychiatic[*sic*] History : …. Per records,

---

[18] This is the actual reason for the false, secret
Malpractice/Defamation, i.e. to create a logic trap. The very,
correctly anticipated, act of seeking legal redress to  their
corrupt construction "proves" their knowingly false
Defamation/Malpractice/False Claim (see again, Begging the
Question!)! Given that Defendants could not succeed legally,
they seek to secretly attack the credibility of Plaintiff to
prevail in litigation, potentially remove on a 72 hour or 60 day
hold, evict from home and terminate from job, TRIFECTA YOU WIN
(and the Rule of Law/Constitution loses).

patient has 1 admission for psychosis when

he was in his 20s (that information provided

by his sister when pt was evaluated by

mobile crisis unit (MCU))." Same knowingly,

or negligently false and Defamatory

Malpractice that caused termination from

employment and (initial) denial of NYCERS

pension.

21.   Page 2 "pt was thought to be experiencing

paranoid delusions. See relevant

documentation in chart." See above.

22.   Page 3 "…., however as per chart review

there appears to have been in 2014 reports

of pt experiencing paranoid delusions which

may impact pt's risk level overall. Risk

factors include …. History of paranoid

delusions…" See above.

23.   Page 4 "…. As per chart, in the past pt was

diagnosed with delusional disorder." Also

"Disposition: Screening and results and

certifications were reviewed with patient and he verbalized understanding and agreement." While the second phrase may not seem defamatory, it is even more knowingly false than the first as "patient" **WAS NOT TOLD OF THE (FALSE/DEFAMATORY) "DIAGNOSIS[19]"!!** This 'secret' was intended, as stated previously by Dr. O'Brien, to *shield Defendants from liability for their* knowing, baseless, mean-spirited Malpractice, and instead of "do no harm", we have concerted, ongoing behavior to "do harm".

24.    On page 6 it appears no Defamation or Malpractice. Same for page 7. On page 8 "… At that time [07/02/2014], as per chart, pt appeared to reports[*sic*] paranoid delusions…" See above.

---

[19] See again 'Disclosure Rule' with regard to tolling in cases of deliberately hidden medical malpractice and/or Defamation.

25.    Page 9 "…. Pt was [2014] thought to be experiencing paranoid delusions. See relevant documentation in chart." And "…. As per chart review there was a hospitalization when pt was in his 20s." and under Risk Assessment "…, however as per chart review there appeared to have been in 2014 reports of pt experiencing paranoid delusions which *may impact pt's risk level overall*. …. History of paranoid delusions…" see above.

26.    Page 10 "…. As per chart, in the past pt was diagnosed with delusional disorder." Of course, again, knowingly or negligently false Malpractice/Defamation. And again "… Disposition: screening and results and certifications were reviewed with patient and he verbalized understanding and agreement." See pg 23.

27.     Page 11, 12 no malpractice/defamation. On page 13, by Dr. D Harshad Bhatt, "…, one prior psych hosp…" see above.

28.     Page 14 appears correct. Page 15 "…. At that time [07/02/2014], as per chart, pt appears to reports [*sic*] paranoid delusions…"

29.     Page 16 "thought to be experiencing paranoid delusions [in 2014]. See relevant *documentation in chart.…. As per chart* review there was a hospitalization when pt was in his 20s." and "MSE: poor to adequate grooming, somewhat malodorous[20]" see above.

30.     Page 17 "review there appears to have been reports in pastof [*sic*] pt experiencing paranoid delusions…, history of paranoid delusions…chiefly d/t paranoid delusions non-bizarre, carrying dx of delusional disorder." And "As per chart, in the past pt

---

[20] Finally, Dr. Bhatt steps out of the defamatory repetition of Mr. Camire and contradicts his (and all others) statement on 'odor'. On Information and Belief, Dr. Bhatt has attached a colostomy bag, which may account for his incorrect defamation.

was diagnosed with delusional disorder." See above.

31.   Finally, page 18 "Primary Axis I Dx : Delusional disorder" again see above.

32.   On July 14, 2016, the wildly malfunctioning 'smoke alarm'[21] went off, for no reason, at three (3) am until staff arrived at 9am. The alarm, all that time, did not go to the FDNY or, apparently the Board, and could not be turned off. It was removed, and Tenant again requested a Reasonable Accommodation, or alternatively that the issue be decided by a Judge/Jury, and not simply be reinstalled. Instead the Verizon Defendants again 'swatted' Plaintiff/Tenant and gave NYPD/FDNY a false 911 call to gain unwarranted access. When NYPD/FDNY arrived,

---

[21] At the time, Tenant/Petitioner had three (3) smoke alarms in small (under 200 sf) studio apt.. Petitioner had previously requested a reasonable accommodation under ADA, to remove the dangerous, malfunctioning 'alarm' or simply place it in the hallway.

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 37

Tenant complied (see Adrian Schoolcraft case) but requested filing a criminal complaint against the criminal Verizon. Like all previous requests to file criminal charges against Verizon, etc., they refused and another IA complaint was registered. Thus we have a pattern of unconstitutional denial of Due Process, or Equal Protection. *Defendant Verizon can call their surrogate*, Under Color of Law, to perform any illegal act or swatting, but if a law abiding tenant requests the same consideration/protection, the answer is an affirmative *no.* This 'policy' appears precinct-wide and an apparent policy/instruction from the Commander(s) at the 13th precinct. As one can imagine, a corrupt, mafialike owner/managing agent would (and have) turn it into a prison/gulag, treating the 'tenants' as chattel (see again Dred Scott).

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 38

The FDNY did nothing wrong, but are a
required party as they responded to that
deliberately false, malicious 911 call, and
thousands of false ("nuisance") alarms for
(no) smoke, endangering the public, and
tenants. Verizon Defendants acknowledge
paying substantial fines for these ongoing
crimes. Verizon, with its numerous
*burglaries/thefts, in 4R and others, on a*
daily basis, results in violations of the
Takings and Due Process Clause of the Fifth
Amendment, Due Process and Equal Protection
of the 14th, Cruel and Unusual Punishment of
the 8th, and, of course, The First Amendment
Retaliation. See above and attached.

33.   Ongoing contract violations. There exists an
undisputed Contract Bargaining Agreement,
between the parties/Defendants NYCTA and TWU
Local 100 (the collective bargaining and
enforcing Agent). These parties have

COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 39

conspired via sins of omission and commission, to deprive Plaintiff of his lawful Civil Service job (considered a 'thing of value' under NYS law), wages, future wages/benefits, good name, *etc..* Petitioner filed four (4) grievances with the Local/NYCTA, which were initially (putatively) supported by the Local, calling *for owed two weeks of wages, overtime, sick* and vacation pay (approx. 50k) which have been stolen through today without (legal) cause. Also regarding the contract violating "termination from probation" when Plaintiff was not on probation, 2016 wages, and 'Contact Differential[22]'. A step I and II were held on the 2015 wage theft, with no Step II decision over a year later, and no hearings or 'steps' in the others. This

---

[22] A hard fought provision in the CBA calls for 'differential' pay for covered members with substantiated, paid Injury On Duty claims, such as Plaintiff. This massive debt is unpaid through today.

effectively ends the contract/remedy for all

members/Public Employees. No hearings before

the Contract Arbitrator. CUNY was made a

party because Mr. Camire works there,

presumably committing his specialty of

Medical Malpractice/Defamation (for 'friends

only?) on innocent CUNY Students, also

Petitioner believes the subject building

*should be used and owned jointly by tenants*

(under Article 11) and CUNY/Baruch as

faculty/graduate/married housing (there are

two other dorms, for NYU and SVA, on the

block). The 18 pages from 2016 were received

last year on May 22, 2017 and the (more

defamatory/original defamation/malpractice)

11 page 2014 'review' on August 30, 2017.

Thus the need for tolling until those dates.

34.   Finally, the record shows, or will, that the

Verizon Defendants (Ms. Rossi and/or others)

went to Plaintiff's employer, conveying

their false, conjured Defamation, in order
to harm/terminate/bankrupt, in order to
evict. The first part was a success (see,
and Take Judicial Notice of 15-cv-
1481(EDNY)), giving NYCTA justification, in
their mind to serially attack a Safety
Sensitive Civil Servant operating trains
full of passengers two months after the
*swatting. This caused an injury and the*
"IME" assigned to evaluate Plaintiff clearly
referenced Mr. Camire/Ms. Rossi's false
narrative WHILE IMMEDIATELY ORDERING
PLAINTIFF BACK TO TRAIN OPERATION AFTER
WITNESSING THE PRESCRIBED CONSUMPTION OF A
BENZODIAZAPINE!! More dangerous
fraud/malpractice/corruption. Thank you.

## CONCLUSION

WHEREFORE, plaintiff prays that the Court/Jury grant such relief as may be appropriate, including injunctive orders, compensatory damages, punitive damages, pre-judgment interest, medical costs, other costs, back wages, pain and suffering, and attorney's fees.

Dated this 21$^{Tst}$ day of May, 2018

/S/Brian Burke, *pro per*