USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/18/18

1  Brian Burke, *Pro Per*
2  145 EAST 23RD STREET APT. 4R
   NEW YORK, NY 10010
3  646-434-8513 briantburke@gmail.com

4

5
               UNITED STATES DISTRICT COURT
6
7       FOR THE SOUTHERN DISTRICT OF NEW YORK

8

9  BRIAN BURKE, Plaintiff,    ) Case#18-cv-4496(PGG)(GWG)
                              )
10                            )
   vs.                        ) AMENDED COMPLAINT AND
11                            ) AFFIRMATION
                              ) JURY TRIAL DEMAND
12 VERIZON COMMUNICATIONS,    )
                              )
13                            )
   INC., HOUSING & SERVICES,  )
14                            )
15 INC., KENMORE HOUSING

16 DEVELOPMENT FUND
17
18 CORPORATION, KENMORE

19 HOUSING CORPORATION,

20 KENMORE ASSOCIATES, L.P.,
21
22 *JOHNSON CONTROLS, INC., NEW*

23 YORK CITY TRANSIT
24
25 AUTHORITY, NEW YORK CITY

26 HEALTH & HOSPITALS
27 ─────────────────────────────
28

                  AMENDED COMPLAINT AND AFFIRMATION

                     JURY TRIAL DEMAND - 1

1  CORPORATION(BELLEVUE), NEW

2

3  YORK CITY POLICE

4  DEPARTMENT, NEW YORK CITY

5  FIRE DEPARTMENT, THE CITY

6

7  OF NEW YORK, RYAN CAMIRE

8  L.C.S.W., CITY UNIVERSITY

9

10 OF NEW YORK, TRANSPORT

11 WORKERS UNION LOCAL 100,

12 DERICK ECHEVARRIA, MADELINE

13

14 O'Brien, M.D., THE ATTORNEY

15 GENERAL OF NEW YORK,

16

17 JOHN/JANE DOE, ET AL.,

18         Respondents

19 _____

20

21              **INTRODUCTION**

22    I declare, certify, verify, and state under penalty

23 of perjury that the foregoing is true and correct.

24 Executed on Wednesday, July 18, 2018:

25

26

27

28

                AMENDED COMPLAINT AND AFFIRMATION

                JURY TRIAL DEMAND - 2

This is an action to remedy the rights of Brian
Burke, a 17[1] year employee of New York City Transit and
28+ year Tenant of 145 East 23rd Street apt. 4R NY, NY,
Patient of Bellevue Hospital (under World Trade Center
Health Program), *etc.,* under violations of 42 U.S. Code
§ 1983, Federal R.I.C.O. and New York Penal
Code Article 460, et seq., Defamation, Defamation *per
se,* (intentional/negligent) Medical Malpractice, Fraud,
*Theft, Tortious Interference With Prospective Economic*
Advantage, Assault, Federal, NY State, NYC False Claims
Act(s), New York City/State Human Rights Law(s),
Retaliatory Termination and Retaliatory Attempted
Eviction, NY State Civil Service Law, HIPAA, Americans
with Disabilities Act, ongoing NYCTA/TWU Local 100
Employment Contract Violations, and/or Conspiracy to
Commit same, *etc.,* but not limited to.

---

[1] It is acknowledged that NYCTA sent plaintiff a strictly
Retaliatory (due to the injury defendants caused and Whistle-
Blowing/Protected Activity)"termination from probation" letter
in May 2016 in violation of Contract, Civil Service Law and
Precedent before Contract Arbitrator and EDNY Judge, using a
Forged/False Instrument for Filing without Agreement
Consideration or Performance.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 3

### JURISDICTION & VENUE

This Court has Jurisdiction pursuant to the following Statutes; 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367. Venue is appropriate in this judicial district as the events that gave rise to this Complaint occurred in this district.

### JURY DEMAND

A jury trial is demanded under the Seventh Amendment to the Constitution of the United States and Fed. R. Civ. P. 38.

### PARTIES

Plaintiff is a 56 year old citizen of the United States, 17 year Train Operator/Station Agent for the New York City Transit Authority (hereon in NYCTA). He has resided in New York County, New York for over thirty years, has never been arrested or charged with any crime and has been regularly and randomly drug and alcohol tested as recently as 03/11/2015.

### *Qui facit per alium facit per se*

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 4

NYCTA is the employer at issue. NYCTA is a public entity pursuant to 42 U.S.C *§12131, etc.* NYCTA resides at 2 Broadway, New York, NY within this Court's Jurisdiction. NYCTA receives federal funds.

VERIZON COMMUNICATIONS, INC., HOUSING & SERVICES, INC., KENMORE HOUSING DEVELOPMENT FUND CORPORATION, KENMORE HOUSING CORPORATION, KENMORE ASSOCIATES, L.P. (hereon in Verizon Defendants, or Verizon) are the *putative owners (see DOB website and attached 990 page)* of 145 East 23rd Street, New York, NY 10010 (a.k.a. 143-147). It is acknowledged that Petitioner has, and does, contend that the alleged, no consideration, 'transfer' of deed, from The People of the United States to Verizon, etc. was/is null and void for violating federal statute requiring an auction, and lack of correct notarization of alleged signature of deed, if that was the proper person to perform said (illegal) transfer (by a Mr. Burke who is not Plaintiff). Johnson Controls, Inc., owns Simplex and the deliberately faulty/injurious 'fire system', on information and

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 5

belief, was/is installed, maintained and/or
manufactured by same.

The New York City Police Department (NYPD), Fire
Department (FDNY), The City of New York, Health &
Hospitals Corporation (H&H or Bellevue), City
University of New York (CUNY), Ryan Camire, Licensed
Clinical Social Worker (in February 2014 at Bellevue
Mobile Crisis Unit, now CUNY), Dr. Madeline O'Brien,
M.D. (*previously Bellevue, now Lincoln Hospital*), *et
al.*, were complicit, to varying degree, with NYCTA and
Verizon in the Depravation of Rights Under Color of
Law, Retaliatory, unlawful, contract violating
termination, Defamation, Medical Malpractice, *etc.*,
causing proven injury to Plaintiff, threatening
unlawful Eviction/Removal from lawful rent stabilized
home of 28+ years (under Color of Law).

### DEPRAVATION OF RIGHTS UNDER COLOR OF LAW

1.     On December 7, 1989, Petitioner moved into
       145 East 23rd Street, as a lawful permanent

tenant, with the assistance of MFY Legal

Services (now MFJ). The property was at the

time considered an SRO controlled by NYS

Rent Stabilization Law.

2.   In approx. 1991 Tenant Brian Burke and

Landlord/Shell Company (Jude Corporation,

owned in whole by **Trường Đình Trần,**

suspected of Heroin/Opium Trafficking in

*South East Asia during Vietnam Conflict and*

*after)* appeared in NYC Housing Court over

alleged 'non-payment' and actual Warranty of

Habitability and Diminution of Services.

Tenant was prevailing party, and, on

Information and Belief, added to serial

"Blacklists" see

https://www.nytimes.com/2016/08/17/nyregion/

new-york-housing-tenant-blacklist.html and

https://www.npr.org/2014/12/14/367833532/ten

ant-blacklist-can-haunt-new-york-renters-

for-years

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 7

3.      In 1994 the Federal Government necessarily assumed control/title of property, due to criminal activity/hazardous conditions known/initiated by Mr. Tran. See *UNITED STATES of America v. ALL RIGHT, TITLE AND INTEREST IN REAL PROPERTY AND APPURTENANCES, thereto known as 143-147 East 23rd Street, New York, New York, Listed as Block 879, Lot 27, which includes the Kenmore Hotel, Defendants, Jude Hotel Corporation, Claimant- Appellant.*77 F. 3d 648

4.      Management of subject property was lawfully undertaken by U.S. Marshal's Service and Managing Agent Esquire Management. Many tenants engaged in crime, harassment, etc., were evicted, along with (former) owner. Plaintiff, who was never charged with, accused of, or engaged in unlawful conduct, (has never been arrested through today), remained a tenant in good standing.

5.     Kenmore Housing Development Fund Corporation
was established. Normally, an HDFC[2] is
founded to allow the existing tenants to
purchase their apartment or 'Co-op' the
building, in the interest of tenants.
Instead a secret (illegal) *quid-pro-quo* (on
information and belief) was performed
illegally transferring subject property to
*the wealthiest Corporation in New York*,
Verizon. Verizon paid nothing for the
property and allegedly put in 8 figures for
a Major Capital Improvement that was never
registered or properly permitted or
licensed. Those 8 figures were immediately
'deeded' back to Verizon as a dubious 'tax
credit' and the money itself mostly stolen

_____

[2] "Through a "tenant petition" process, residents are able
to choose whether to remain renters or become owners."
https://www.habitatmag.com/Publication-Content/2008/2008-
June/Featured-Articles-from-Our-Print-Magazine/HDFC-Low-Income-
Affordable-Co-ops, not done.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 9

by H&S, Inc. principles (including convicted Drug Trafficker Larry Oaks).

6.   It is acknowledged that Verizon Corporation, Inc. hired Housing & Services, Inc. to act as their[3] 'Managing Agent', presumably subject to removal for malfeasance, misconduct or perhaps no reason at all. 'Managing Agent' Housing & Services, Inc. *has continuously engaged in said willful*, intentional (with scienter) unlawful, harmful, dangerous, fraudulent, *etc.*, misconduct since. Petitioner has previously attempted to inform the 'Beneficial Owner' (Verizon CEO, etc.) via email, snail mail, phone, *etc.*, of this malfeasance.

7.   Plaintiff acknowledges engaging in litigation with Verizon's Shell Company for

---

[3] Verizon owns, undisputed, 99.9%[*sic*] of listed shell 'owner'(no employees*, etc.*) Kenmore Associates, L.P., i.e. Verizon is the definitive 'Beneficial Owner' as a matter of law, i.e. actual 'Landlord'(until deed transfer is made null and void).

most of this century. Petitioner, *pro se*,
was the prevailing party, including before a
jury, and in a sealed (NDA) Federal case.

8.     In retaliation[4] for Plaintiff attempting to
contact/inform the listed 'Beneficial Owner'
of the subject property of criminal activity
by their employees/contractees (H&S,I),
Verizon, via employee of sub-agent H&S,I
*Francesca Rossi L.C.S.W.*, ordered/*instructed*
Bellevue Hospital Mobile Crisis Unit to

---

[4] Section 1983 is an important means of redress for
constitutional violations committed not only by state government
officials, but also by non-state actors, such as private
individuals and federal officials. Indeed, the statute is known
as the "Ku Klux Klan Act" because one of its primary purposes
was to provide a civil remedy against abuses that were being
committed in southern states during the Reconstruction era,
especially by private organizations such as the Ku Klux Klan.
See *Monroe v. Pape*, 365 U.S. 167, 174-76 (1961). The Supreme
Court has consistently held that non-state actors can, under
certain circumstances, engage in conduct under "color of State
law," and may be subject to liability under section 1983 where
they "act jointly" or conspire with state government officials.
See, e.g., *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*,
531 U.S. 288, 296 (2001); *Tower v. Glover*, 467 U.S. 914, 919
(1984); *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); cf. *United
States v. Price*, 383 U.S. 787, 794 (1966) (holding that, for
purposes of finding liability under the criminal law analogue of
section 1983, 18 U.S.C. § 242, private individuals acting
jointly with state officers engage in conduct "under color" of
state law)

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 11

perform witting, intentional
Defamation/Defamation *per se*/Medical
Malpractice (which was done) and attempted
to have Plaintiff removed from home without
court order, cause, probable cause (in a
corrupt misuse/attempted
malpractice/maladaptation of NYS Mental
Hygiene Law/Practice (see **Adrian**
**Schoolcraft,v. City of New York, et al., 10**
**Civ. 6005 (RWS)**), see also First Amendment.

9.     On February 7, 2014[5] at approximately 10-
       1030am Mr. Ryan Camire, LCSW knocked on
       Petitioner's door (4R) while he was
       preparing for work (as a Safety Sensitive
       Civil Servant/Train Operator). There was no
       prior (or to this day) call, email, letter,
       appointment, requirement, need, *etc.*, from
       the Bellevue Mobil Crisis Unit. Apparently,

---

[5] Petitioner will request the august District Court 'Toll'
the acknowledged Statute of Limitations for both Medical
Malpractice and Defamation/Defamation per se under Disclosure
Rule and relevant case law.

the first words I stated were "I do not require your services". Of course, as petitioner will show, "your" (i.e. Ryan Camire/Bellevue Mobile Crisis Unit) services, in violation of Hippocratic Oath/Medical Ethics (on Information and Belief Mr. Camire (and Ms. Rossi), are licensed medical professionals bound by *same) were performed only for Verizon* Defendants to establish (unlawful, Due Process Clause Violating) "probable cause" to kidnap/remove Tenant/Civil Servant in order to (illegally) evict/terminate from employment. Nevertheless, familiar with Adrian Schoolcraft case (and others), Petitioner recorded a brief "evaluation" with Mr. Camire, in order not to be removed/tased/arrested/drugged that day, *etc.*, for this clearly malicious, unwarranted, retaliatory (for Protected

Activity) 'swatting[6]'. While, prior to

Discovery, Petitioner cannot ascertain the

exact relationship between Ms. Rossi, LCSW

and Mr. Camire, LCSW ('dating'?. Friends,

former students), it is clear Mr. Camire put

his(and yes Ms. Rossi's) license, employment

and liability on the line. Clearly

conferring before, during and after the

'evaluation' *with his* actual

client/'patient' Ms. Rossi, he proceeded to

commit DELIBERATE MALPRACTICE/DEFAMATION

(*PER SE*) in order to 'do a solid' in helping

to strip this law abiding Tenant/Civil

Servant of ALL CONSTITUTIONAL RIGHTS (see

Defendant's favorite, and only case law on

their behalf[7]). Petitioner has medical

---

[6] https://www.cnn.com/2018/04/13/us/police-no-charges-swatting-death/index.html

[7] ***Dred Scott v. Sandford***, 60 U.S. (19 How.) 393 (1857)" [Tenants/Civil Servants engaged in Protected Activity] had for more than a century before been regarded as beings of an inferior order, and altogether unfit to associate with the [Licensed Clinical Social Worker] race, either in social or

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 14

documents from Bellevue Hospital delineating

their concerted/actionable/deliberate

Medical Malpractice/Defamation, which wound

up creating deliberate, successful

Interference with Prospective Economic

Advantage (defendants got plaintiff fired

for Protected Activity). Petitioner will

request this same Medical 'psychological'

*Documentation be submitted under seal or*

heavily redacted, as per HIPAA, *etc.*.

10.    As to the deliberately false

'diagnosis'/Defamation/Malpractice by Mr.

Camire/Ms. Rossi (apparently a

political relations; and so far inferior, that they had no
rights which the [LCSW/Landlord/Employer] man was bound to
respect; and that the [Whistle-Blower] might justly and lawfully
be reduced to slavery for his benefit. He was bought and sold,
and treated as an ordinary article of merchandise and traffic,
whenever a profit could be made by it. This opinion was at that
time fixed and universal in the civilized portion of the
[LCSW/Landlord/Verizon/NYCTA] race. It was regarded as an axiom
in morals as well as in politics, which no one thought of
disputing, or supposed to be open to dispute; and men in every
grade and position in society daily and habitually acted upon it
in their private pursuits, as well as in matters of public
concern, without doubting for a moment the correctness of this
opinion.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 15

duet/collaboration) LCSW, and as required in

NYS Case Law Re: Defamation, within 11 page

"Bellevue Hospital Center Chart Review

Print": a) on page one "Consenting Party :

patient consents or involuntary treatment".

As suspected, at the time, if

Plaintiff/"Patient" did not consent it would

have ended in involuntary commitment UNDER

COLOR OF LAW. B) *page 2 "WM with PPH of*

psychosis, delusions, 1 prior admission in

his 20s" which, other than the WM (White

Male) was perfectly false, without evidence

or contradictory evidence, malicious,

defamatory, defamatory *per se*, intentionally

injurious, intentional malpractice, *etc.*.

Petitioner notes the prior clause was false

"employed as an MTA Train Conductor"

(Petitioner was an NYCTA Train Operator)

which, while in and of itself is not

damaging goes to Mr Camire's

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 16

indifference/prejudice/incompetence. The
second page prominently references the
undisputed attempt by Petitioner (Protected
Activity) to "Petition the Government for
redress of grievances" via email and
Defendants claim this First Amendment Act
grants them lawful jurisdiction to
potentially deprive Tenant/Civil Servant of
all *Civil Rights*, *under Color of Law*, *while*
acknowledging it contained NO THREAT TO
ANYONE, only a lawful request Verizon
refrain from their own escalating criminal
conduct, admittedly informing
government/elected officials of same (i.e.
Whistle-Blowing[8]).

_____

[8]DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS
FIFTH EDITION page 20 "A mental disorder is a syndrome
characterized by clinically significant disturbance in an
individual's cognition, emotion regulation, or behavior that
reflects a dysfunction in the psychological, biological, or
developmental processes underlying mental functioning. Mental
disorders are usually associated with significant distress or
disability in social, occupational, or other important
activities. An expectable or culturally approved response to a
common stressor or loss, such as the death of a loved one, is

11.  As far as the deliberately False Defamation/Defamation *per se*/Medical Malpractice on page 3: a) "Per records, patient has 1 admission for psychosis when he was in his 20s (Info provided by sister)." Petitioner can only state, THIS IS BRUTALLY, INTENTIONALLY DAMAGINGLY FALSE!!!!!! In a phone conversation with *Petitioners only Sister, this deliberate*, defamatory falsehood was tricked out. She thought she was discussing her only son, who has been diagnosed on Autism Spectrum, and not Plaintiff, for whom SHE HAS/HAD NO MEDICAL INFORMATION! This conversation violated HIPAA and was additionally intended to Divide and Rule this "patient" by creating intentional, malicious, interfamily

---

not a mental disorder. Socially deviant behavior (e.g., political, religious, or sexual) and **conflicts that are primarily between the individual and society are not mental disorders** unless the deviance or conflict results from a dysfunction in the individual, as described above."[emphasis added]

friction. Petitioner was additionally the
victim of Identity Theft by Verizon
Employees and that ID was apparently used in
2000 for some individual treated for a
Hernia (Petitioner had/has no Hernia and
never was treated by Bellevue prior to 2016
WTC Health Program appointment).

12.   On page 4. "disheveled" Petitioner had just
*woken up (working pm/evening shifts to 11pm)*
in order to get required rest for safety
sensitive occupation and prior to
shower/dressing. And "appears unkempt and
disheveled" (same answer). Under "Thought
Content: Persecutory delusions, Paranoid
ideation" and "Patient is very paranoid and
believe [*sic*] he is persecuted from several
areas." Mr. Camire LCSW, appears comically
un-self-aware, that he is engaging in the
very conduct (i.e. 'persecution'/Depravation
of Civil Rights Under Color of Law (1983)))

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 19

that would naturally engender being "very

paranoid", see

https://en.wikipedia.org/wiki/Political_abus

e_of_psychiatry_in_the_Soviet_Union[9] And the

real reason for this terror "Impulsively

sends emails to staff, public officials re:

perceived mistreatment". Q.E.D. What does

"Impulsively" equal? There was only one

*email at the time. This would not seem to*

lead to this Defamation. If one, admittedly

un-liked, email is "Impulsive", what is two?

Prison? Worse? For telling the truth[10]? B)

"Judgment: Judgment is fair [true] but

_____

[9] The "anti-Soviet" political behavior of some individuals — being outspoken in their opposition to the authorities, demonstrating for reform, and writing critical books — were defined simultaneously as criminal acts (e.g., a violation of Articles 70 or 190-1), symptoms of mental illness (e.g., **"delusion**[emphasis added] of reformism"), and susceptible to a ready-made diagnosis (e.g., "sluggish schizophrenia"). Within the boundaries of the diagnostic category, the symptoms of pessimism, poor social adaptation and conflict with authorities were themselves sufficient for a formal diagnosis of "sluggish schizophrenia."

[10] Petitioner admittedly made two *de minimis* errors as to the year, but not the month/day of two of Verizon's Burglaries in 4R.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 20

continues to send emails and avoid

suggestion of treatment." The gist/demand,

that Plaintiff cease and desist (not the

criminal Verizon Defendants) in conduct that

they (correctly) see does not serve their

interests as Slavemaster/Corrections/Parole

Officer/Mafia/RICO, i.e. to engage in First

(and other Amendments) Amendment Protected

*Activity*. *Full Stop*. C) "*Suicide Risk*

*Factors* : Impulsive or Reckless behavior"

and "Violence Risk Factors : Paranoid

delusions or perceived threat" apparently

believing, and having boxes of evidence of,

Verizon attempting to unlawfully evict and

make homeless Plaintiff must be seen as

friendly, or else be stripped of all Civil

Rights.

13.    Page 5 gets interesting, to the real 1983

(and RICO) violating Malicious Medical

Malpractice/Defamation/Depravation of Rights

Under Color of Law. First Mr. Camire, LCSW
acknowledges meeting with his
friend/colleague/co-conspirator/depriver of
Civil Rights (Under Color of Law) Ms. Rossi
LCSW. To "discuss the referral [from
Verizon] information and review a copy of
the email sent by the patient (copy of said
email is in the chart for review). Ms. Rossi
*indicates the patient has been a resident at*
the Kenmore since 1989 [true], and despite
no known history of mental illness
[absolutely true, admitting their concerted
corruption], the patient has a long history
of paranoid ideation and delusion
surrounding the Kenmore and other
institutions." "Patient is currently in
$70,000 of rent arrears [false] and although
legal steps have been taken in order to
evict the patient[yet absolutely no reason
to be 'paranoid'!!] or force a judge

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 22

[certainly this august Court might be interested in this] to garnish his wages [?], none have been successful." The last clause is absolutely correct, and the reason we are, again, in Court! Defendants acknowledge they have tried and failed all lawful means and now avail themselves of ongoing Predicate RICO illegal means, Under *Color of Law. Drop the mic. "Patient's email* [note the singular] is in response to the most recent legal action." Again boom, inculpatory to their own obviously, intentionally contradictory corrupt/corrupting false premises, such as the repeated malicious intentionally false "diagnosis" as "Impulsive". Which is it? Was the email "Impulsive" or in response to "the most recent legal action"? "patient is suspicious of the staff at the residence,

the owners [Verizon Communications, Inc.],

and any attempt to access his apartment[11]."

14.    Defamatory/Defamatory *per se*/Medical

Malpractice on page 6 include "The patient

has a complex delusional system involving

the building staff and owners, and how they

are defrauding the State of New York and the

taxpayers." Mr. Camire, LCSW, on Information

*and Belief*, *not an* Attorney, *appears to*

employ "begging the question[12]" logical

fallacy [would that itself be Delusional,

i.e. Projection?], as well as performing an

*ex post facto* cover-up/threat regarding

---

[11] Plaintiff has attempted to report numerous
burglaries/home invasions/Thefts (including of cash escrow)of
4R. NYPD has refused to take any Criminal Report on the Verizon
Defendants. On information and belief, Verizon/H&S,I's 'Chief of
Security' is a former NYPD Detective from the local precinct
(13) and its current "bagman" see for ex. **Serpico** "In Manhattan
ex-detectives are the bagmen". This failure to accept complaints
against their friend/former colleague/bagman Dan Danaher was
brought to Internal Affairs, to no avail. One of the reasons
NYPD is a Defendant in this 1983 Suit.

[12] **Begging the question,** sometimes known by its Latin name
*petitio principii* (meaning assuming the initial point), is a
logical fallacy in which the writer or speaker assumes the
statement under examination to be true. In other words, **begging
the question** involves using a premise to support itself.

exposing the undisputed facts delineated in the email. That makes this Public Corruption/Theft of Honest Services and Conspiracy to perform same via Intentional Medical Malpractice/Fraud/Defamation. And later "Patient was challenged on his delusions a few times during the interview and he was not responsive to intervention." *Begging the question again, apparently the* "Patient" was required to state 2+2=5 and mean it, or else, see Part One, Chapter Seven of the book **1984**[13]. Also mentioned is Petitioner's esteemed Uncle, Francis Broucek, M.D. a renowned Menninger trained Psychiatrist, graduate of the Topeka Institute for Psychoanalysis, former Professor of Medicine at the University of Kansas and author of several books on the

---

[13] See also Lord Acton, the British historian, who said: "All **power** tends to corrupt; absolute **power corrupts** absolutely."

subject. This Cv would seem to outweigh the

alleged, or at best overworked/overused

"credentials" of Mr. Camire/Ms. Rossi (on

Information and Belief they earned no more

than a Masters in Psychology),

accredited/unaccredited? From where? Which

they have maliciously employed no

differently than those Soviet era

Psychiatrists *or the PHDs at Abu Ghraib*[14],

or Dr. Mengele or Dr. Nassar. Then Mr.

Camire incredibly contends "Patient denied

legal history" after extensive disclosure

that it was in fact discussed. Pure fiction

and Medical Malpractice of the worst

order/Defamation/Defamation *per se.*

15.   On page 7 (of 11) the intentional

Defamation/intentional Medical Malpractice

continues. "and despite his delusions and

bizarre behavior at times,…" more begging

---

[14] https://qz.com/462911/when-american-psychologists-use-their-skills-for-torture/

the question illogical intentional
falsehoods/Malpractice/Defamation. And "All
[who are "all"?, the Royal 'We[15]'?] are
currently in agreement that although the
patient continues to exhibit bizarre
behavior at times 2/2 delusional
Disorder,…"And the most devastating
Defamation/Medical Malpractice and the
*reason Ms. Rossi 'swatted' the*
Petitioner/"patient" in the first place, and
why we are here "Ms. Rossi asked
specifically if there is any need to discuss
the situation with his employer (the
MTA)[actually the NYCTA] as the patient is a
Train Conductor [false, a Train Operator].
As there is no current cause for concern of
the patient harming self or others [then why
the call and the deliberately false

---

[15] The use of "we" instead of "I" by an individual person,
as traditionally used by a sovereign. "Queen Victoria once
remarked, with British understatement, "we are not amused.""

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 27

"diagnosis", to justify the visit??], there

is no justification for violating the

patient's confidentiality by discussing this

with the MTA. Patient has been gainfully

employed without incident in this position

for 14 years. Ms. Rossi was encouraged,

however, to continue to monitor the patient

**and his communications closely**[emphasis

added] *in order to determine if there are*

any specific threats made to self or other

commentary intimating potential for self-

harm." And next "Axis I : Delusional

disorder"[16]  and "Dx(es) for Presnt [*sic*] :

---

[16] "Delusional disorder is one of the less common psychotic
disorders, in which patients have delusions but not the other
classical symptoms of schizophrenia (thought disorder,
hallucinations, mood disturbance or flat affect)." So called
Delusional Disorder is incredibly rare "One to 2 per cent of
mental health hospitalizations and only 0.001 to 0.003 per cent
of first-time psychiatric admissions are due to delusional
disorder (Kendler, 1982)." This is one reason (other than
additional Defamation) to accuse Plaintiff of the false prior
admission. As can be seen .001 to .003 percent of first-time
psychiatric admissions (or Diagnosis) would constitute one to
three **out of every hundred thousand psychiatric admissions**, i.e.
this Defamation/"diagnosis"/Malpractice is not only
intentionally false and consistently contradicted throughout the

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 28

Delusional disorder" next "Proplem(s) : :
LCSW[17] : Delusional Disorder, Rent Arrears"
and finally, for this page "Assessment/Plan
(WP) : A: 52 year old WM domiciled at the
Kenmore with symptoms consistent with
delusional disorder."

16.    Page 8 appears to have nothing Defamatory,
but clearly discloses that the "patient" was
*not informed of their malicious, mendacious,*
intentionally fraudulent/injurious
false/Defamatory/Medical Malpractice
"diagnosis". I wonder why. That is the
reason for the tolling request under
Disclosure Rule, this was not disclosed
(other than to Employer).

---

false malicious 'narrative' but would be one for the medical
books, if it were not.

[17] "We", (i.e. the two LCSW's), Mr. Camire and Ms. Rossi,
acting in concert/collusion to deny Plaintiff his
Civil/Constitutional Rights, Under Color of Law, appear to agree
with Petitioner/'Patient" that these two LCSWs are the actual
sum total/cause of Patient 1663232's "problem(s)" as a statement
against interest.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 29

17.   Page 9 (of 11) A Clinical Psychiatrist, Madeline O'Brien, MD, acknowledges never seeing talking to or discussing the secret "diagnosis" by Mr. Camire and Ms. Rossi. Nevertheless she accepts their inconsistent, false, malicious narrative as gospel, doubling down on the same, sight unseen. "Patient sent a very psychotic lengthy email…." "Patient has a very systematized delusional system…" "patient has a long history of paranoid ideation and delusions…." Wildly actionable, unconstitutional, Defamatory, Defamatory per se, Medical Malpractice, all done in secret. Who was this "diagnosis" supposed to assist? The public? Ms. Rossi/Verizon? Time for some Discovery Depositions!!

18.   Page 10 "[petitioner] is really seeking legal interventions which would verify his delusional beliefs…" and again, after

discussing numerous court actions Dr.

O'Brien states in parroting of Mr. Camire

"patient denied legal history" are they

referring to criminal convictions (or

arrests), for which Petitioner admittedly

has none. How about the Defendants?

19.  Page 11 of 11 again from Dr. O'Brien "Ms.

Rossi understood that he could not be

*transferred to a Psych ER against his will*

[must have been disappointing to adversary

Ms. Rossi, acting under Color of Law], but

raised the question as to whether his

employer needed to be notified of his

delusions---he has worked for fourteen years

without incident and he must have annual PE,

random drug testing and vision screening and

he is still employed. It would neither be

her role or that of the MCU at this juncture

to contact employer [and yet someone,

presumably Ms. Rossi, did]. Patient does not

at this time pose a threat of serious physical harm to himself or to others, , there is no justification for violating the patient's confidentiality by discussing with the MTA. Patient does need to be closely monitored [but presumably is "delusional" about being closely monitored?]-**although patient's with his type of delusional system usually flood the courts and seek legal vindication**[18][emphasis added]-patient could escalate [unlike Verizon?] if he becomes too stressed or he feels…."

20.    Regarding Defamation/Malpractice in the documents (18 pages) generated by Bellevue from the sole actual medical appointment

---

[18] This is the actual reason for the false, secret Malpractice/Defamation, i.e. to create a logic trap. The very, correctly anticipated, act of seeking legal redress to  their corrupt construction "proves" their knowingly false Defamation/Malpractice/False Claim (see again, Begging the Question!)! Given that Defendants could not succeed legally, they seek to secretly attack the credibility of Plaintiff to prevail in litigation, potentially remove on a 72 hour or 60 day hold, evict from home and terminate from job, TRIFECTA YOU WIN (and the Rule of Law/Constitution loses).

(under World Trade Center Health Program

auspices and jurisdiction) on June 14, 2016,

we will try to be more succinct. Page 1,

"Developmental History : ….. As per chart,

reports of a psychiatric hospitalization

when pt was in his early 20s." False

injurious Defamation/Defamation per

se/Medical Malpractice. And "Past

Psychiatic[*sic*] History : …. Per records,

patient has 1 admission for psychosis when

he was in his 20s (that information provided

by his sister when pt was evaluated by

mobile crisis unit (MCU))." Same knowingly,

or negligently false and Defamatory

Malpractice that caused termination from

employment and (initial) denial of NYCERS

pension.

21.   Page 2 "pt was thought to be experiencing

paranoid delusions. See relevant

documentation in chart." See above.

22.  Page 3 "…., however as per chart review there appears to have been in 2014 reports of pt experiencing paranoid delusions which may impact pt's risk level overall. Risk factors include …. History of paranoid delusions…" See above.

23.  Page 4 "…. As per chart, in the past pt was diagnosed with delusional disorder." Also "*Disposition: Screening and results and certifications were reviewed with patient and he verbalized understanding and agreement.*" While the second phrase may not seem defamatory, it is even more knowingly false than the first as "patient" **WAS NOT TOLD OF THE (FALSE/DEFAMATORY) "DIAGNOSIS[19]"!!** This 'secret' was intended, as stated previously by Dr. O'Brien, to shield Defendants from liability for their

---

[19] See again 'Disclosure Rule' with regard to tolling in cases of deliberately hidden medical malpractice and/or Defamation.

knowing, baseless, mean-spirited

Malpractice, and instead of "do no harm", we

have concerted, ongoing behavior to "do

harm".

24.    On page 6 it appears no Defamation or

Malpractice. Same for page 7. On page 8 "…

At that time [07/02/2014], as per chart, pt

appeared to reports[*sic*] paranoid

*delusions…" See above.*

25.    Page 9 "…. Pt was [2014] thought to be

experiencing paranoid delusions. See

relevant documentation in chart." And "…. As

per chart review there was a hospitalization

when pt was in his 20s." and under Risk

Assessment "…, however as per chart review

there appeared to have been in 2014 reports

of pt experiencing paranoid delusions which

may impact pt's risk level overall. ….

History of paranoid delusions…" see above.

26. Page 10 "…. As per chart, in the past pt was diagnosed with delusional disorder." Of course, again, knowingly or negligently false Malpractice/Defamation. And again "… Disposition: screening and results and certifications were reviewed with patient and he verbalized understanding and agreement." See pg 23.

27. Page 11, 12 *no malpractice/defamation. On page 13, by Dr. D Harshad Bhatt, "…, one prior psych hosp…" see above.

28. Page 14 appears correct. Page 15 "…. At that time [07/02/2014], as per chart, pt appears to reports [*sic*] paranoid delusions…"

29. Page 16 "thought to be experiencing paranoid delusions [in 2014]. See relevant documentation in chart.…. As per chart review there was a hospitalization when pt

was in his 20s." and "MSE: poor to adequate grooming, somewhat malodorous[20]" see above.

30. Page 17 "review there appears to have been reports in pastof [*sic*] pt experiencing paranoid delusions…, history of paranoid delusions…chiefly d/t paranoid delusions non-bizarre, carrying dx of delusional disorder." And "As per chart, in the past pt *was diagnosed with delusional disorder*." See above.

31. Finally, page 18 "Primary Axis I Dx : Delusional disorder" again see above.

32. On July 14, 2016, the wildly malfunctioning 'smoke alarm'[21] went off, for no reason, at three (3) am until staff arrived at 9am. The alarm, all that time, did not go to the FDNY

---

[20] Finally, Dr. Bhatt steps out of the defamatory repetition of Mr. Camire and contradicts his (and all others) statement on 'odor'. On Information and Belief, Dr. Bhatt has attached a colostomy bag, which may account for his incorrect defamation.

[21] At the time, Tenant/Petitioner had three (3) smoke alarms in small (under 200 sf) studio apt.. Petitioner had previously requested a reasonable accommodation under ADA, to remove the dangerous, malfunctioning 'alarm' or simply place it in the hallway.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 37

or, apparently the Board, and could not be
turned off. It was removed, and Tenant again
requested a Reasonable Accommodation, or
alternatively that the issue be decided by a
Judge/Jury, and not simply be reinstalled.
Instead the Verizon Defendants again
'swatted' Plaintiff/Tenant and gave
NYPD/FDNY a false 911 call to gain
*unwarranted access. When NYPD/FDNY arrived,*
Tenant complied (see Adrian Schoolcraft
case) but requested filing a criminal
complaint against the criminal Verizon. Like
all previous requests to file criminal
charges against Verizon, etc., they refused
and another IA complaint was registered.
Thus we have a pattern of unconstitutional
denial of Due Process, or Equal Protection.
Defendant Verizon can call their surrogate,
Under Color of Law, to perform any illegal
act or swatting, but if a law abiding tenant

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 38

requests the same consideration/protection, the answer is an affirmative no. This 'policy' appears precinct-wide and an apparent policy/instruction from the Commander(s) at the 13th precinct. As one can imagine, a corrupt, mafia-like owner/managing agent would (and have) turn it into a prison/gulag, treating the 'tenants' *as chattel* (*see again Dred Scott*). The FDNY did nothing wrong, but are a required party as they responded to that deliberately false, malicious 911 call, and thousands of false ("nuisance") alarms for (no) smoke, endangering the public, and tenants. The City of New York was added as a required party. Verizon Defendants acknowledge paying substantial fines for these ongoing crimes. Verizon, with its numerous burglaries/thefts, in 4R and others, on a daily basis, results in

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 39

violations of the Takings and Due Process
Clause of the Fifth Amendment, Due Process
and Equal Protection of the 14th, Cruel and
Unusual Punishment of the 8th, and, of
course, The First Amendment Retaliation. See
above and attached.

33.   Ongoing contract violations. There exists an
undisputed Contract Bargaining Agreement,
*between the parties/Defendants NYCTA and TWU*
Local 100 (the collective bargaining and
enforcing Agent). These parties have
conspired via sins of omission and
commission, to deprive Plaintiff of his
lawful Civil Service job (considered a
'thing of value' under NYS law), wages,
future wages/benefits, good name, *etc.*.
Petitioner filed four (4) grievances with
the Local/NYCTA, which were initially
(putatively) supported by the Local, calling
for owed two weeks of wages, overtime, sick

and vacation pay (approx. 50k) which have

been stolen through today without (legal)

cause. Also regarding the contract violating

"termination from probation" when Plaintiff

was not on probation, 2016 wages, and

'Contact Differential[22]'. A step I and II

were held on the 2015 wage theft, with no

Step II decision over a year later, and no

*hearings or 'steps' in the others. This*

effectively ends the contract/remedy for all

members/Public Employees. No hearings before

the Contract Arbitrator. CUNY was made a

party because Mr. Camire works there,

presumably committing his specialty of

Medical Malpractice/Defamation (for 'friends

only?) on innocent CUNY Students, also

Petitioner believes the subject building

should be used and owned jointly by tenants

_____

[22] A hard fought provision in the CBA calls for
'differential' pay for covered members with substantiated, paid
Injury On Duty claims, such as Plaintiff. This massive debt is
unpaid through today.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 41

(under Article 11) and CUNY/Baruch as faculty/graduate/married housing (there are two other dorms, for NYU and SVA, on the block). The 18 pages from 2016 were received last year on May 22, 2017 and the (more defamatory/original defamation/malpractice) 11 page 2014 'review' on August 30, 2017. Thus the need for tolling until those dates. *Derick Echevarria is the elected Vice* President of Stations Department for TWU Local 100, and on information and belief, is the individual, acting against the fiduciary/contractual interests of all members under his aegis, is/has been blocking the scheduling/resolution of the filed grievances regarding the ongoing Wage Theft/Fraud, Wire/Mail Fraud, False Instruments for Filing, unlawful/contract violating 'termination', *etc..* The NYS Attorney General was added as a required

party in order to challenge New York State
Labor Law 190 as unconstitutional under the
Equal Protection  Clause of the 14th
Amendment, Due Process Clause(s) and the
Taking Clause of the Fifth Amendment. Labor
Law 190, facially and applied, stops Public
Employees from collecting damages for Wage
Theft. NYS Labor Law § 190. Definitions."3.
"*Employer*" *includes any person, corporation,*
limited liability company, or association
employing any individual in any occupation,
industry, trade, business or service. The
term "employer" shall not include a
governmental agency." and 12 NYCRR § 142-
2.14 Employee "(b) Employee does not include
any individual employed by a Federal, State
or municipal government or political
subdivision thereof." Also NY Lab L § 651
(2014) Section 5 part N "(n)by a federal,
state or municipal government or political

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 43

subdivision thereof. The exclusions  from

the term "employee" contained in this

subdivision shall be as defined by

regulations of the commissioner;" The Labor

Law 190 was quoted in NYCTA's successful

second Motion To Dismiss in 15-cv-1481 as

reason to deny damages, thus standing. The

Labor Law Section 651 was quoted by Senior

*Labor Standards Investigator* Vincent R.

Hammond as the reason the NYS Department of

Labor cannot intervene or assist in

recovering the ongoing wage theft/fraud or

damages, earlier this year, thus again

standing. Thus, again, the Attorney General

is a required party to a constitutional

challenge to a (NYS) Statute.

34.   Finally, the record shows, or will, that the

Verizon Defendants (Ms. Rossi and/or others)

went to Plaintiff's employer, conveying

their false, conjured Defamation, in order

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 44

to harm/terminate/bankrupt, in order to evict. The first part was a success (see, and Take Judicial Notice of 15-cv-1481(EDNY)), giving NYCTA justification, in their mind to serially attack a Safety Sensitive Civil Servant operating trains full of passengers two months after the swatting. This caused an injury and the "IME" assigned to evaluate Plaintiff clearly referenced Mr. Camire/Ms. Rossi's false narrative WHILE IMMEDIATELY ORDERING PLAINTIFF BACK TO TRAIN OPERATION AFTER WITNESSING THE PRESCRIBED CONSUMPTION OF A BENZODIAZAPINE!! More dangerous fraud/malpractice/corruption. Thank you.

## CONCLUSION

WHEREFORE, plaintiff prays that the Court/Jury grant such relief as may be appropriate, including injunctive orders, compensatory damages, punitive damages, pre-judgment interest, medical costs, other costs, back wages, pain and suffering, and attorney's fees.

Dated this 18$^{Tst}$ day of July, 2018

/S/Brian Burke, *pro per*

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 46

**Part VII** **Supplemental Information**

Complete this part to provide additional information for responses to questions on Schedule R (see instructions)

| Identifier | Return Reference | Explanation |
|---|---|---|
| COMMONALITY OF OFFICERS | FORM 990, SCHEDULE R | HOUSING AND SERVICES, INC IS THE SPONSOR, DEVELOPER AND PROPERTY MANAGER OF THE LOW-INCOME SUPPORTIVE HOUSING PROJECTS KNOWN AS THE CECIL HOTEL, KENMORE HALL AND THE NARRAGANSETT HOTEL, WHICH RESIDE IN THE FOLLOWING RESPECTIVE LEGAL ENTITIES - CECIL HDFC, KENMORE HDFC AND NARRAGANSETT HDFC (ALL TAX-EXEMPT FROM FEDERAL INCOME TAXES UNDER SECTION 501(C)(3) OF THE INTERNAL REVENUE CODE) CECIL HDFC WHOLLY OWNS A CURRENTLY INACTIVE NEW YORK STATE C CORPORATION (CECIL HOTEL DEVELOPMENT CORPORATION) KENMORE HDFC WHOLLY OWNS A NEW YORK STATE C CORPORATION KENMORE HOUSING CORPORATION, WHOSE SOLE ACTIVITY IS TO ACT AS THE GENERAL PARTNER FOR THE NEW YORK STATE LIMITED PARTNERSHIP KENMORE ASSOCIATES LP KENMORE HOUSING CORPORATION HAS 0 1% GENERAL PARTNERSHIP INTEREST AND VERIZON CORPORATION ULTIMATELY HAS A 99 9% LIMITED PARTNER'S INTEREST IN KENMORE ASSOCIATES LP HOUSING AND SERVICES, INC CONTROLS CECIL HDFC, KENMORE HDFC AND NARRAGANSETT HDFC THROUGH A COMMONALITY OF TRUSTEES AND OFFICERS AS FOLLOWS JAMES DILL, HSI EXECUTIVE DIRECTOR/CFO IS THE CHAIR, EXECUTIVE DIRECTOR, TREASURER AND CFO OF CECIL HDFC, KENMORE HDFC AND NARRAGANSETT HDFC, MOLLY MATTIMORE, HSI SENIOR DIRECTOR OF OPERATIONS/ASSISTANT & CORPORATE SECRETARY IS A TRUSTEE AND CORPORATE SECRETARY OF CECIL HDFC, KENMORE HDFC AND NARRAGANSETT HDFC, AND CLIFF BRODER, HSI TREASURER, CFO OF CECIL HOTEL KENMORE HDFC AND NARRAGANSETT HDFC IN ADDITION MR DILL IS THE CHAIR, PRESIDENT, TREASURER, CFO OF CECIL HOTEL DEVELOPMENT CORPORATION AND KENMORE HOUSING CORPORATION, MS MATTIMORE IS A DIRECTOR AND CORPORATE SECRETARY OF CECIL HOTEL DEVELOPMENT AND KENMORE HOUSING CORPORATION, AND MR BRODER IS A DIRECTOR OF CECIL HOTEL DEVELOPMENT CORPORATION AND KENMORE HOUSING CORPORATION MR DILL IS ALSO THE PRESIDENT AND CFO OF KENMORE ASSOCIATES LP AND MS MATTIMORE IS ALSO THE CORPORATE SECRETARY FOR KENMORE ASSOCIATES LP |

*In the Matter of the Claim of*

BRIAN BURKE
v.s.
NEW YORK CITY POLICE DEPARTMENT AND
NEW YORK CITY HEALTH + HOSPITALS CORP., ETAL.

TO:

**PLEASE TAKE NOTICE** that the undersigned claimant(s) hereby make(s) claim and demand against you as follows:

1. The name and post-office address of each claimant and claimant's attorney is:

BRIAN BURKE
145 EAST 23RD ST #4R
NEW YORK, NY 10010

2011 SEP 12 A 10 24

CITY OF N.Y. LAW DEPT.
OFFICE OF CORP. COUNSEL
COMMUNICATIONS UNIT

2. The nature of the claim:

42 U.S.C. 1983, DEFAMATION
MEDICAL MALPRACTICE, OFFICIAL MISCONDUCT,
THEFT OF HONEST SERVICES, ERROR, FEDERAL, STATE, CITY FALSE CLAIMS ACT

3. The time when, the place where and the manner in which the claim arose:

CONTINUOUSLY FROM FEBRUARY 2014 TO PRESENT
AT BELLEVUE HOSPITAL AND CLAIMANT'S HOME.
INTENTIONALY FALSE MEDICAL RECORDS BY R. CAMIRE L.C.S.W
AND BY DR. O'BRIEN AND DR. BHATT OF BELLEVUE. AND "SWATTING"
AND "SWATTING" BY NYPD IN JULY 2016 AT CLAIMANT'S HOME

4. The items of damage or injuries claimed are (do not state dollar amounts)

FALSE MEDICAL RECORDS/"DIAGNOSIS"/DATA USED TO
DEFAME, DENY NTCERS APPLICATION AND CAUSE LOSS OF
CIVIL SERVICE EMPLOYMENT.

2011 SEP 12 A 10: 56

OFFICE OF THE NY LAW DEPT.
NYC MEDIATION & INQUIRY

BRIAN BURKE

**INVOICE**

145 EAST 23RD STREET APT 4R
NEW YORK, NY 10010
646-434-8513
briantburke@gmail.com

INVOICE #1
DATE: MARCH 29, 2015

**TO:**

Housing & Services, Inc./Verizon Communications Inc.
243 West 30th Street 2nd Floor
New York, NY 10001

**FOR:**

Theft & water damage

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Home Invasions by H.S.I./Verizon employees 11/13/09 & 02/14/10. Theft of escrow funds, see attached. Not including thefts of I.D. legal *documents, photographs, other evidence, etc* | | | $ 24, 925 |
| Water Damage from 'rain' caused by H.S.I. employees performing unlicensed plumbing work in apt 5R 11/24/14 including, but not limited to Apple desktop and contents, Apple Touch, rare and other books, legal documents and evidence, bedding, Canon camcorder, etc.. No less than, but subject to upward revision | | | $10,000 |
| Water Damage, again from 5R on 03/22/15, to Apple laptop and contents, Apple Iphone and contents, bedding, legal documents and evidence, books, rugs, etc.. No less than but subject to upward revision. | | | $10,000 |
| c.c. Lowel C. McAdams, C.E.O, Verizon Communications<br><br>140 West Street<br>New York, NY 10007 | | | |
| | | TOTAL | $44,925 |

Make all checks payable to Brian Burke
Total due in 15 days. Overdue accounts subject to a service charge of 1% per month.



**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET ROOM 1200**
**NEW YORK, N.Y. 10007-2341**

WWW.COMPTROLLER.NYC.GOV

015 - 151

Scott M. Stringer
**COMPTROLLER**

Date:      09/15/2017
Claim No:  2017PI026011
RE:        Acknowledgment of Claim
Your Claim/Policy#:

BRIAN BURKE
145 E 23 ST APT 4R
NEW YORK, NY 10010

Dear Claimant:

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

If you have any questions regarding your claim, you may contact us at 212-669-2478 for claims involving personal injury.

Sincerely,

Bureau of Law & Adjustment

**SEE ALSO:** Top 10 Retail Leases of the Month: It Was a Target Rich Month

The former hotel at **143-147 East 23rd Street** between Third and Lexington Avenues, now providing affordable housing and called **Kenmore Hall**, obtained the most building complaints citywide for the year ending last month—a stunning 220—which includes allegations of poor ventilation and water leakage, according to data provided to Commercial Observer by the city's **Department of Buildings**. (See top 10 list below).

That is a jump of more than 280 percent from the year prior, when the 326-unit building was ninth on the top 10 list with 78 complaints. And Kenmore's tally this year bested **535 West 162nd Street**, which had 168 complaints and **2700 Third Avenue** in the Bronx, which ran up 94.

An excess of 100 complaints in a year is typically considered high, according to a spokesman for the DOB. Currently only five of the complaints in the Kenmore Hotel are active.

The building has a rich criminal history involving prostitution and drug trafficking, but the federal government seized the property in 1995 following a court battle, according to a 1999 news release from non-profit **Housing and Services Inc.**, which the Giuliani administration selected four years earlier to redevelop and operate the facility. Housing and Services Inc. reopened Kenmore in 1999 after a $34 million gut renovation with affordable studio apartments.

A bulk of the complaints filed between June 2014 and June 2015 allege a

poor ventilation system, preventing good air circulation on floors three through 23, DOB records show. (The 22-story building doesn't have a 13th floor for those counting.)

"That literally might be two disgruntled tenants," **Molly Mattimore**, the deputy executive director of Housing and Services Inc., told CO. "Complaints are not violations. If there were an actually concern, we would have 200 violations. Our violation numbers are very low."

| Ranking | Address | Borough | Complains |
|---|---|---|---|
| 1 | 143 East 23rd Street | Manhattan | 220 |
| 2 | 535 West 162nd Street | Manhattan | 168 |
| 3 | 2700 Third Avenue | Bronx | 94 |
| 4 | 351 West 42nd Street | Manhattan | 91 |
| 5 | 114-09 95th Avenue | Queens | 89 |
| 6 | 1029 Brighton Beach Avenue | Brooklyn | 84 |
| 7 | 200 Baychester Avenue | Bronx | 66 |
| 8 | 671 Lincoln Avenue | Brooklyn | 66 |
| 9 | 2309 Young Avenue | Bronx | 66 |
| 10 | 461 Berriman Street | Brooklyn | 62 |

*Source: Department of Buildings records June 2014-2015.*

The building has five open DOB violations, all concerning elevator maintenance.

Each of the apartments in the Kenmore has an individual air conditioning unit and only the hallways would be affected by a poor ventilation system, Ms. Mattimore said. The ventilation system has not had a major overhaul since its installation during a major gut renovation about 16 years ago.

"It is something that we hope to improve," Ms. Mattimore said.

**KEYWORDS:** 143-147 East 23rd Street,   Housing and Services Inc.,   Kenmore Hall



| State of New York<br>**Division of Housing and Community Renewal**<br>Office of Rent Administration<br>Web Site: www.nyshcr.org | Enforcement Unit<br>Gertz Plaza  *FL6*<br>92-31 Union Hall Street<br>Jamaica, New York 11433 | Docket Number: |
| --- | --- | --- |

## Tenant's Statement of Complaint (s)  -  Harassment

**Filing Instructions:** Complete an original and two copies of this complaint and include a copy of any attachments to **each** copy. File the original, two copies and any accompanying documents at the address indicated above by personal delivery or mail.  **Failure to follow this procedure or include all required information may result in the rejection of this application.** See Part II for definitions of harassment.

### Part 1 (Must be filled in completely in every case)

Mailing Address of Tenant:

Name:  **BRIAN BURKE**

Number/Street:  **145 East 23rd Street**                                   Apt. No.:   **4R**

City, State, Zip:  **NEW YORK, NY 10010**

Telephone Number: ( **646** ) **434-8513**                        ( )
(Residence)                                                                        (Business)

Mailing Address of Owner:

Name:   **Lowell C. McAdam, C.E.O., Verizon Communications, Inc.**

Number/Street:  **1095 Avenue of the Americas**

City, State, Zip:  **NEW YORK, NY 10036**

Telephone Number: ( )                              ( **212** ) **395-1000**
(Residence)                                                                        (Business)

Name and Mailing Address of Managing Agent (if different from above):

Name:   **James Dill, Executive Director, Housing & Services, Inc.**

Number/Street:  **243 West 30th Street floor 2**

City, State, Zip:  **NEW YORK, NY 10001**

Telephone Number: ( **212** ) **252-9377**

Address of Building (if different from above):

**143-147 East 23rd Street, New York, NY 10010**
Number/Street                                    City, State, Zip Code

| (Complete this box in all cases) | Number of | | (Insert an address where you can be reached if you leave your present address) |
| --- | --- | --- | --- |
| | Rooms | Occupants | **I would be homeless, briantburke@gmail.com** |
| *Apt.  No. & Location (as "no. 3, second floor front", etc.)*<br>**4R fourth floor rear** | 1 | 1 | |

Are you a SRO (Single Room Occupancy) tenant?  Yes ☒       No ☐    **am, or was**

Are you or were you an employee of the owner?  Yes ☐       No ☒

RA-60H  (8/03)                                                  - 1 -

**Complete if your unit is in a co-op or condo:**  (write name and address of each listed below)

Unit Owner/Proprietary Lessee: _____

To Whom do you pay Rent: _____

Managing Agent for Rental Units: _____

Managing Agent for Co-op/Condo Units: _____

President or Chairman of Co-op/Condo: _____

## Part II - Definition of Harassment

It shall be unlawful for any owner or any person acting on his or her behalf, directly, or indirectly, to engage in any course of conduct (including, but not limited to, interruption or discontinuance of required services, or unwarranted or baseless court proceedings) which interferes with, or disturbs, or is intended to interfere with or disturb the privacy, comfort, peace, repose or quiet enjoyment of the tenant in his or her use or occupancy of the housing accommodations, or is intended to cause the tenant to vacate such housing accommodation or waive any right afforded under the Rent Regulatory Laws.

There must be a willful interruption in services or a continuing course of conduct, as distinguished from an isolated incident.

Persons using this form may be summoned to testify under oath in court or before this agency in connection with criminal or civil action initiated on the basis of the statements contained herein.  Painting complaints, other service complaints, and complaints of violations such as overcharges, bonus payments, furniture tie-in sales, security deposits, lease renewals, etc., should not be filed on this form, but on other appropriate forms which may be obtained at your local Borough or District Rent Office.

**Penalties for Proven Violations**:  Owners found guilty of harassment are subject to fines imposed by the Commissioner of not less than *$1,000 nor more than $5,000 for each offense.  The Division of Housing and Community Renewal (DHCR) will permit no future rent* increases once there has been a finding of harassment, until such finding is lifted by DHCR order.  In addition, DHCR may refer harassment violations to the District Attorney.  Harassment of a rent regulated tenant which causes physical injury is a Class E Felony, punishable by imprisonment and fine.

## Part III - General Information

1. Date you took occupancy: __12/07/1989__  Current rent charged: __$660? a month__ (mo.) ____ (wk.)
   Date current owner of building became the owner: __In Dispute, approx. 1993__

2. Do you have a current lease?  Yes ☐ No ☒  If yes, state the term of current lease: From __11__ / __21__ / __1997__ To __11__ / __21__ / __1998__

3. Is rent being paid?  Yes ☐ No ☒ Amount paid $ _____ , Amount demanded $ __Lease says $215__

   Is rent being accepted? Yes ☐ No ☒ Are receipts being given? Yes ☐ No ☒ Has landlord refused to renew your lease? Yes ☒ No ☐

4. Give total number of apartments (units) in building: __320__  Occupied: __300?__  Vacant: __unknown__

   If there are vacant apartments (units) in the building, indicate whether they are left open, locked, boarded up or being altered:
   (Circle appropriate items) __unknown__

5. Have you been notified that the building is scheduled for demolition or alteration? Yes ☒ No ☐

6. Has any alteration or construction work taken place at the building in the last six months?  Yes ☒ No ☐

7. Is a "work permit" from the Department of Buildings on display?  Yes ☐ No ☒

   Has the owner filed for Certificates of Eviction or for permission not to renew your lease?  Yes ☐ No ☐

   If yes, indicate Docket Nos. __Unknown, see FIFTEEN (15) DAY NOTICE OF TERMINATION (att.)__

8. Is there a tenant's committee in your building?  Yes ☐ No ☒  If yes, indicate name, address and telephone number of the Chairman of the Committee: _____

9. My apartment is regulated under ☒ Rent Stabilization; ☐ ETPA;  ☐ Rent Control; ☒ Hotel Stabilization (includes SRO tenants.)

10. Do you authorize DHCR to communicate with your attorney/representative concerning this complaint?  Yes ☐ No ☐

   If yes, indicate name, address and telephone number: __No attorney, at this time (pro se) my phone is 646-434-8513__

   **address: Brian Burke 145 East 23rd Street apt. 4R New York, NY 10010 email briantburke@gmail.com**

RA-60H  (8/03)                                    - 2 -

## Part IV – Nature of Harassment
### If you need more space for details use Part V

11. ☐ I was offered $_____ by _____ to vacate my apartment by _____.
    (name)                                                        (date)

    ☒ I was threatened with eviction if I refused to vacate my apartment. **see attached FIFTEEN (15) DAY NOTICE**

    ☐ I was told that essential services would not be provided.

    ☐ I was offered another apartment.

    ☐ After I refused the offer, the services were decreased.

    ☐ After I refused the offer, I have received threats of eviction from _____
    (name - give details in Part V).

12. ☒ The owner has brought court action against me:   Yes ☒   No ☐   If yes, complete a, b, c & d below.

    ☒ Kind of court action:  **Housing Court**          Date of court action: **Various**

    ☒ Index No.  **071507/2007**              (If more than one court action, list in Part V)

    ☐ I have retained a lawyer. Give name, address and telephone no.: _____

    ☒ The claim against me is unfounded for the reasons stated in Part V.  **Also give status of legal proceeding.** (In any subsequent conference, please bring copies of any court papers.)

13. ☒ I filed the following applications with the Office of Rent Administration or other Agency.

| Docket No. & Nature of Complaint | Date | Disposition |
|---|---|---|
| **35255131M** | **02/06/2018** | *Open, Hearing 05/31/2018* |

☒ I have also filed complaints with  **Dept. Of Buildings/ECB**   **02/06/2018**   **020218PLONMCJ02**
                                        Name of Agency              Date            File No.

**Violations for plumbing work w/o permit, etc.**
                                        Disposition

14. ☐ I have been illegally evicted, **"locked-out"** or otherwise excluded from my apartment. **In 1997 I was illegally locked out as Blackmail/Extortion to sign 1997 lease.**

15. ☒ I have taken legal action against the owner:   Yes ☒   No ☐   If yes, indicate: **Sealed**

16. ☒ The owner has intentionally decreased, withheld or interrupted the following services: ☒ security; ☒ heat; ☒ hot water; ☒ cold water; ☐ electricity; ☐ superintendent or janitor; ☐ garbage removal; ☐ elevator; ☒ other

## Part V – Further Statement of Tenant

(State in this space additional facts which may assist Office of Rent Administration in processing your complaint)
**All statements and attachments must be in English.**

    Please see attached documents. Tenant also complained to NYPD Internal Affairs regarding tenants being blocked from reporting burglaries by Managing Agent in 4R and other apartments, i.e. corruption of NYPD and other government employees. Filled Notice Of Claim regarding this and other acts of Public Corruption by Managing Agent involving Health & Hospitals, Corp. etc.. A 50H Hearing took place and Deposition can be made available to DHCR. Other doc. and investigations can be made available to DHCR, but some involve sensitive, deliberately false HIPAA information (i.e. Malpractice, Defamation per se, Conspiracy, etc.) used to get Tenant illegally terminated from Civil Service title.

RA-60H  (8/03)                    - 3 -

## Part V – Further Statement of Tenant (cont'd)

(State in this space additional facts which may assist Office of Rent Administration in processing your complaint)
**All statements and attachments must be in English.**

In addition, as harassment for Protected Activity, massive, frequent water raining from above destroying documents, other evidence, other property, electronics, after being properly noticed of this terror. Other Violations and crack using residents deliberately brought in to terrorize this, and other, law abiding Tenants. Additional malicious, knowingly false '911' or other complaints to, NYPD, FDNY, Health & Hospitals (Mobile Crisis Unit) to create public danger/ridicule of this (and presumably other) law abiding Tenants (a.k.a. 'swatting') in order to defame and/or deny basic civil rights and due process. Misuse of NYS 'Mental Hygeine' Law to unlawfully disposess/incarcerate tenants that the Managing Agent themselves deliberately injured.  Other criminal activity too numerous to delineate in this space but can be places into the record. Vexatious, Frivolous Litigation (over 1,000 cases in NYC Housing Court with only 320 studios) at the highest rate in NYC, and the deliberate violations mentioned in the attached Sworn Affidavit.

I have read the foregoing and I hereby affirm under the penalties provided by law that the contents thereof are true of my own knowledge.

| It is not necessary that the foregoing be notarized, but false statements may subject you to the penalties provided by law. |
|---|

_____
Signature of Tenant

Dated:   04/12/2018
_____

sworn to before me
this 12th day of April, 2018
Steven E Hiller

**STEVEN E. HILLER**
**Notary Public, State of New York**
**No. 01HI4507658**
**Qualified in New York County**
**Commission Expires November 30, 2021**

# GENERAL AFFIDAVIT

As a resident in the county <u>New York</u> within the state of <u>New York</u> ,
<u>Brian Burke</u> personally approached me, the undersigned Notary, and
made his sworn testimony in a general affidavit, that the following statement is
completely factual and true to the best of his belief and knowledge.

| Statement: |
|---|
| Under Penalty of Perjury; the Affiant, Brian Burke _____hereby states that the forgoing is true and correct: To Kenmore Ass./Housing & Services, Inc./Verizon *Communications Inc./Jason D. Borloff & Ass., PLLC/Kenmore Housing Development Fund/etc.* and TWIMC; This Sworn Affidavit is in reply to the improperly served 'predicate notice?' attached to my door (4R)(three copies) on Wednesday afternoon, 04/28/2018. While there are innumerable (deliberate?) errors of fact and law contained within this False Instrument (NYS Penal Law S175.35 **Offering a false instrument for filing in the first degree**) and potential Legal Malpractice and violations of New York Rules of Professional Conduct (RULE 1.3. Diligence (a) A lawyer shall act with reasonable diligence and promptness in representing a client.), etc., we will cover only a few. As Due Diligence would reveal, over 20 YEARS AGO, I signed a Lease (actually a renewal lease as I was an existing tenant and all provisions restricting statutory rights are presumed invalid, as a matter of law). In that lease was a required 'Section 8 Rider' non waiver of rights, specifically, but not solely, granting unwaivable right to a jury trial, as enshrined in the NY (and Federal) Constitution. I have never waived this right that approx. 1 million Americans fought and died for. If you performed additional Due Diligence, perhaps by asking your client about prior litigation between the parties, or performed any search of NY County Housing Court records or requested the large legal file, or box of files, containing the previous cases you would see the only "Notice Of Entry" (see attached) performed in all the cases, served and filed by Kenmore Ass. prior Counsel. This definitive, published (New York Law Journal, March 10, 2008, https://www.law.com/newyorklawjournal/almID/900005505416/) Case Law is perfectly dispositive Collateral Estoppel and *Res Judicata* regarding your actionable "new lease" and FIFTEEN (15) DAY NOTICE OF TERMINATION (att.). More evidence of lack of Due Diligence and Legal Ethics. If you, Mr. Jason D. Boroff, esq. Bar #2860302, claim to be unaware of this, certainly the alleged signer of the False Instrument, Ms. Molly Mattimore, must, as she testified, BEFORE THE JURY, in that very case, #071507/2007. While I understand, given the outcome of that case (a 62%+ rent abatement), your express |

desire to deny me my VERIFIED right to a jury trial, etc., you will not prevail in this equally express corruption, malpractice, Abuse Of Process, False Instrument For Filing, etc..

Mr. Boroff, as you pretend to misapprehend current NYS Statute/Case Law regarding 'Lease Renewal', surprising given you primary or sole occupation as a 'landlord' attorney, perhaps the following might be of assistance "The law allows only two landlord-oriented provisions added to a renewal lease: (1) the right to adjust the lease terms or rent by order of the DHCR or the Rent Guidelines Board, and (2) the imposition of the subsequently adopted rent guideline when the lease is executed during a period when the guideline is unknown or pending final adoption. These provisions are preprinted on the two-page state-authorized form (RTP-8) that is the only renewal form allowed under rent stabilization. A Rule: Don't agree to unauthorized riders, give the landlord private information, or accept any renewal form other than the RTP-8." And "Generally, stabilized leases must be renewed on the same terms, or better terms for the tenant, as the lease they signed when they moved in. So that means if a landlord either inserts clauses or riders that are to his advantage, or excludes previous provisions that were beneficial to the tenant, those changes are null and void, and not enforceable when a dispute arises."

In addition, you have the rent amounts (deliberately?) wrong in your "new lease". Ms. Mattimore testified the rent was/is $660 per month and the signed (under duress) 1997 Lease stated, correctly, $215. The Jury set the rent at $250, perhaps misunderstanding/conflating with $215. Also, due to actionable affirmative activity by your client, conspiring with my employer, (Interference With Prospective Economic Advantage, etc.) my income has dropped in years 2015, 2016, 2017 to approx.. 10K in those years. As NYCTA has illegally stolen wages, etc. and willfully misreported to the IRS and I was below income, I did not file income tax documents for those years. See 15-cv-1481(EDNY) and attached NY Workers Compensation receipt for $11,159.37, the total of my income for 2017. For 2016 I received a full (26 week) Unemployment Insurance payout of just under 10K, again the sole source of income for that year. In 2015 I received an Approx. $3K payout of 30 days at 60% pay sick payout (late), as per contract, and a NY State Disability payout of under 1K and a partial (not 26 weeks) Unemployment Claim payout and again approx. 11K. Thus I would, again, qualify for 'Section 8' subsidy for those years. I have been certified with a Disability/Workers Compensation Injury (PTSD) (*deliberately caused by your client and NYCTA*) *and your actions additionally* violate the ADA, NYC Human Rights Law, Tenant Non-harassment laws, ("An aggrieved party should contact HUD within one year after the alleged discriminatory housing practice occurs or ceases. In New York City, an aggrieved party may file a complaint with the NYC Commission on Human Rights within one year from the date on which the discriminatory act occurred. An aggrieved party may also choose to sue for damages against a landlord who violates this law, and may recover attorney's fees if successful,

*Executive Law§ 296(5), NYC Admin. Code§ 8-107, 109, 42 U.S.C. § 3610(a)(1)"*, **NY AG Tenant's Rights**), *etc.*. I believe this attempted Fraud/False Instrument/Threat of Retaliatory Eviction, *etc.*, is due to my Protected Activity, including, but not limited to, my admitted reporting of, H&S,I/Kenmore Ass./Verizon, intentional violations of Building Codes, resulting in an existing violation with DOB (*Real Property Law §223-b*), see attached. "**HARASSMENT** A landlord is prohibited from any action intended to force a *tenant out of an apartment or to compel a tenant to give up any rights granted the tenant by law.* No landlord, or any party acting on the landlord's behalf, may interfere with the tenant's privacy, comfort, or quiet enjoyment of the apartment. Harassment may take the form of physical or verbal abuse, willful denial of services, or multiple instances of frivolous litigation. ***If a landlord lies or deliberately misrepresents the law to a tenant, this may also constitute harassment****[emphasis added].* Rent regulated tenants who feel they have been victimized by harassment should contact DHCR. Landlords found guilty of harassment are subject to fines of up to $5,000 for each violation. Under certain circumstances, harassment of a rent regulated tenant may constitute a class E felony. *Penal Law § 241.05.* Further, New York City tenants have additional recourse against harassment. Tenants may bring a claim in housing court and the court may issue restraining orders against owners if violations have been found. *NYC Admin Code § 27- 2115"***NY Attorney General Tenant's Rights**. Thank you for your consideration, you can reach me at 646-434-8513 or ⸺⸺⸺⸺⸺⸺⸺, or by mail at 145 East 23rd St. #4R New York, NY 10010.

To: Jason D. Borloff, 349 East 149th St. rm.703 Bronx, NY 10451, certified USPS, email c.c. Lowell C. McAdam, C.E.O. Verizon Communications, Inc. 140 West St. NY, NY 10013 and James Dill, Executive Director, Housing & Services, Inc., 243 West 30th St. fl 2 NY, NY 10001 by certified USPS and by email

**Affiant Signature:** _____

**Date Signed:**   the   **6th day**   of   **April**   20 **18**

**Sworn and subscribed to before me on this day,** **06** of **April**   20 **18**

_____
**Notary Public**

NEIL SCHNEIDER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SC6065135
Qualified In Manhattan County
My Commission Expires 10-09-2021

Index No. 071507/2007

CIVIL COURT OF THE CITY NEW YORK
COUNTY OF NEW YORK, PART II

KENMORE ASSOCIATES, L.P.,

       Petitioner-Landlord,

BRIAN BURKE,

       Respondent-Tenant.

NOTICE OF ENTRY

NORRIS MCLAUGHLIN & MARCUS, PA
Attorneys for Petitioner
375 Third Avenue
New York, New York 10022
212-808-0700

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART H

---------------------------------------------

**KENMORE ASSOCIATES, L.P.**

                        Petitioner-Landlord,

              -against-

BRIAN BURKE,

                       Respondent-Tenant

---------------------------------------------

INDEX NO.: 071507/2007

**NOTICE OF ENTRY**

        **PLEASE TAKE NOTICE**, that the within is a true copy of the Decision signed by the Honorable Judge David B. Cohen on February 21, 2008 and entered by the Clerk of the Civil Court on February 25, 2008.

Dated:    New York, New York
           March 24, 2008

                                  Dean M. Roberts, Esq.
                                  Norris McLaughlin & Marcus
                                  *Attorneys for Kenmore Associates, Petitioner*
                                  875 Third Avenue, 18th Floor
                                  New York, New York  10022
                                  (212) 808-0700

To:

Brian Burke
143-147 East 23rd Street
Room 4-R
New York, New York  10010

249574-1

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: HOUSING PART H
-----------------------------------------------------------------X

KENMORE ASSOCIATES, L.P.,

                            Petitioner - Landlord,         Index No.  071507/07

        - against -                              **DECISION/ORDER**

BRIAN BURKE,
143-147 East 23rd Street
Room 4-R
New York, New York 10010

                             Respondent - Tenant.

-----------------------------------------------------------------X

**DAVID B. COHEN, J.:**

Recitation, as required by CPLR 2219 (a), of the papers considered in the review of this motion to dismiss and cross-motion to strike:

| Papers | Numbered |
|---|---|
| Notice of Motion to Dismiss ("Omnibus Motion III") and Affidavits Annexed................................................ | 1 - 2 |
| Notice of Cross-Motion to Strike and Affidavits Annexed.. | 8 - 9 |
| Replying Affidavits Annexed ("Omnibus Motion IV")....... | 17 - 18 |
| Exhibits.................................................................. | 3 - 7; 10 - 16 |

Upon the foregoing cited papers, the Decision/Order on these motions is as follows:

### INTRODUCTION

This non-payment proceeding was commenced by petitioner for rent arrears stemming from April 2005 to the present.  Currently before this court is whether respondent has waived his right to a jury trial.

Among other items, respondent submitted a jury demand with his omnibus motion pursuant to CPLR 2218. Respondent bases his entitlement to a jury trial upon the initial lease he entered into in November 1997 for a one year term.

## FACTUAL BACKGROUND

On November 22, 1997 petitioner and respondent entered into a form rent stabilized lease agreement that contained a jury waiver provision and, at the same time, and incorporated as part of the same document, petitioner and respondent entered into a Section 8 rent subsidized rental agreement that included a provision invalidating any jury waiver that may have been included elsewhere in the rental agreement. The Section 8 provisions were expressly incorporated as part of the rent stabilized lease at the time the documents were signed. These lease agreements ("the 1997 lease") expired by their terms on November 21, 1998. The 1997 lease is the only lease provided to the court. Since its expiration, respondent has continued to live in the apartment. It is undisputed that respondent's Section 8 subsidy has been terminated, he is no longer receiving Section 8 benefits and remains a rent stabilized tenant. Petitioner argues that since respondent's participation in the Section 8 program has come to an end, the Section 8 lease provisions incorporated into the original lease no longer apply and the jury waiver is valid and in effect.

## CONCLUSIONS OF LAW

Generally, the right to a jury trial is so fundamental that courts "will indulge every reasonable presumption against waiver" (*Aetna Ins. Co. v Kennedy*, 301 US 389, 393 [1936]). As such, jury trial waivers are always strictly construed and are not to be inferred or extended by implication

2

(*Barrow v Bloomfield*, 30 AD2d 947, 947 [1ˢᵗ Dept 1968]). In both civil and criminal cases, where a waiver of a jury trial is asserted, the burden rests with the party who seeks to enforce it and there must be a showing that the waiver was a clear, knowing and intelligent waiver, and that the waiver was voluntary and intentional (*407-88 Assoc. v Sawyer*, 83 Misc 2d 300, 301 [Civ Ct, NY County 1975]). Once a jury trial is properly waived, courts will not interfere with the waiver (*see Matter of Malloy*, 278 NY 429, 433 [1938]).

In residential cases, a jury waiver clause in a lease is binding between the parties and will bar a trial by jury in litigation covered by the provisions of the lease (*see Waterside Holding Corp. v Lask*, 233 AD 456, 457 [1ˢᵗ Dept 1931]); *Fowler Court Tenants Inc. v Young*, 119 Misc 2d 492, 493-494 [Civ Ct, NY County 1983]); *Pierre v Williams*, 106 Misc 2d 81, 83 [Civ Ct, NY County 1980] [court upheld a waiver clause in a residential lease in a dispute arising from warranty of habitability claims]). Although warranty of habitability claims cannot be waived and are statutorily protected, the manner in which disputes arising from them are handled is not mandated and parties are free to waive their right to a jury trial (*Pierre v Williams*, 106 Misc 2d at 84).

However, because the right to a trial by jury is fundamental and courts indulge every reasonable presumption against a finding of a waiver (*Aetna Ins. Co. v Kennedy*, 301 US at 393), the burden of proving a waiver rests upon the party seeking to enforce it (*Street v Davis*, 143 Misc 2d 983, 985 [Civ Ct, NY County 1989]; *see also Williams v Mascitti*, 71 AD2d 813, 813 [4ᵗʰ Dept 1979]). Petitioner seeks to strike respondent's request for a jury trial and, as such, has the burden of demonstrating to this court that respondent waived his right to a jury trial.

3

Where separate Section 8 leases and rent stabilized leases that do not reference one another are in effect at the same time, the Section 8 lease supercedes the rent stabilized lease and controls while "the parties are subject to [the Section 8] program" (*Dick v Strachan,* 136 Misc 2d 79, 81 [Civ Ct, NY County 1987]; *see also Licht v Moses,* 5 Misc 3d 1023 [A], 2004 NY Slip Op 51522 [U], *4 [Civ Ct, Kings County 2004] [once a tenant is terminated from the Section 8 program, the rent stabilized lease alone controls unless the Section 8 provisions are specifically incorporated by reference], *revd on other grounds,* 11 Misc 3d 76 [App Term, 2nd Dept 2006]).  In this case, two lease forms were executed simultaneously, they incorporated each other by explicit reference, and thus merged into one single lease between the parties; they were not two separately executed leases (*see generally Cosmopolitan Assoc., LLC v Ortiz,* NYLJ, Nov. 12, 2004, at 20, col 1[Civ Ct, Queens County] [rent stabilized lease and HAP contract were not merged, implicitly recognized merger where documents are incorporated by reference]; *Licht v Moses,* 5 Misc 3d 1023 [A], 2004 NY Slip Op 51522 [U], *4 [same], *revd on other grounds,* 11 Misc 3d 76).  A provision in the 1997 lease explicitly invalidated any jury waiver provision (*see* Lease dated Nov. 22, 1997 [Petitioner's Exhibit G, at 2, 3 & 13, ¶ N [6]).  Therefore, the  provision invalidating the jury waiver is part and parcel of the lease entered into between the parties (*see e.g. Dick v Strachan,* 136 Misc 2d at 81 [Section 8 lease entered into subsequent to a rent stabilized lease sets forth parties' complete agreement and supercedes rent stabilized lease's waiver of trial by jury]; *see also Rosario v Diagonal Realty, LLC,* 8 NY3d 755, 762 [2007] [acceptance of a Section 8 subsidy is a term and condition of every lease signed with a Section 8 tenant], *cert denied __ US __,* 2008 US LEXIS 959, 2008 WL 114041 [2008]; *Cosmopolitan Assoc., LLC v Ortiz,* NYLJ, Nov. 12, 2004, at 20, col 1; *Licht v Moses,* 5 Misc 3d 1023 [A], 2004 NY Slip Op 51522 [U]).

4

Respondent retains all the protections of a rent stabilized tenant even though his Section 8 subsidy has expired (*see Dick v Strachan*, 136 Misc 2d at 81, citing *Matter of Fishel v New York City Conciliation and Appeals Bd.*, 123 Misc 2d 841 [Sup Ct, Kings County 1984]). The Rent Stabilization Code (9 NYCRR) requires that landlords provide renewal leases requested by a rent stabilized tenant (RSC § 2522.5 [b] [1]) and that every renewal lease be offered "on the same terms and conditions as the expired lease" (RSC § 2522.5 [g] [1]; *Rosario v Diagonal Realty, LLC*, 8 NY3d at 761; *Evans v Schneider*, 2 Misc 3d 139 [A], 2004 NY Slip Op 50268 [U], *1 [Sup Ct, App Term 2004]). No renewal leases have been submitted by either party. Where a rent stabilized tenant fails to timely renew an expiring lease, "such lease or rental agreement may be deemed to have been renewed upon the same terms and conditions . . . had the offer of a renewal lease been timely accepted" (RSC § 2523.5 [c] [2]). Similarly, where a landlord fails to offer a renewal lease, "the tenant shall continue to have the same rights as if the expiring lease were still in effect" (RSC § 2523.5 [d]; *Rosario v Diagonal Realty, LLC*, 8 NY3d at 764 [landlord's obligation to continue to accept Section 8 subsidies is part and parcel of requirement that renewal leases under Rent Stabilization Code be renewed with the "same terms and conditions" as the expired lease]; *see also Kouznetski v Verga Assoc.*, NYLJ, July 10, 2002, at 29, col 2 [Sup Ct, Kings County] [notation on initial rent stabilized lease concerning tenant's Section 8 subsidy incorporated into each subsequent renewal lease]).

Although respondent's Section 8 *subsidy* has terminated, the provision invalidating a jury waiver remains part and parcel of the only lease between the parties ever presented to this court (*see supra*), and the court will not presume the tenant's intent to waive so fundamental a right as the right to a trial by jury without clear evidence (*see Aetna Ins. Co. v Kennedy*, 301 US at 393). No rent

stabilized lease for the time period covered in this non-payment proceeding has been provided to the court which would demonstrate that a jury waiver is currently in effect (*see Dick v Strachan*, 136 Misc 2d at 81). Petitioner has thus failed to demonstrate the tenant's "clear, knowing and intelligent" waiver of his right to a trial by jury (*see 407-88 Assoc. v Sawyer*, 83 Misc 2d at 301).   As such, petitioner has not met its burden of proving respondent's waiver of his right to a jury trial.

The court has considered respondent's remaining claims and finds them to be entirely without merit, and has considered petitioner's remaining arguments and finds them to be meritorious.

## CONCLUSION

Accordingly, for the reasons set forth herein, respondent's omnibus motion III and IV are denied in all respects except that respondent's demand for a jury trial is not stricken.   Petitioner's cross motion is granted in its entirety except that respondent's second unnamed affirmative defense of a jury demand is not stricken.   The matter is restored to the court's calendar on March 11, 2008, Part H, Room 1164B at 9:30 A.M. for trial.

This constitutes the decision and order of the court.

The clerk shall serve a copy of this decision and order upon all parties.

Dated: February 21, 2008
New York, New York

_____
DAVID B. COHEN, J.H.C.

6

## <u>FIFTEEN (15) DAY NOTICE OF TERMINATION</u>

TO:   **BRIAN BURKE** – Tenant
     **"JOHN DOE" and "JANE DOE"** - Occupant
     145 East 23rd Street, Apt. 4R
     New York, New York 10010

**PLEASE TAKE NOTICE**, that the undersigned landlord has elected to and does hereby terminate, on April 17, 2018, and your tenancy, with respect to those certain premises situated at 145 East 23rd Street, New York, New York 10010 more particularly described as all rooms in Apartment 4R in said premises.

On or about November 1, 2001, you were terminated from your Section 8 subsidy as you refused to recertify as per the Department of Housing Preservation and Development Rules and Regulations.

On or about November 1, 2017, in accordance with the law, the Landlord offered you a new Rent Stabilized lease for the apartment, not subject to Section 8 Rules and Regulations, since you were terminated from the Section 8 program.

The grounds under §2524.3 (f) of the Rent Stabilization Code upon which the landlord relies for your removal or eviction and the termination of your tenancy is the fact that you have refused to sign your lease which was duly offered to you in accordance with §2523.5 of the Rent Stabilization Code on or about November 1, 2017.  To date, you have not signed the lease properly offered to you by the Landlord.

**PLEASE TAKE FURTHER NOTICE**, that you are required to remove from and surrender the demised premises, on or before April 17, 2018, that being not less than fifteen (15) days after service of this Notice upon you, in satisfaction of §2524.2 ( c) (1) of the Rent Stabilization Code and your lease.  Upon your failure to remove from the demised premises on

**ADD'L MAIL**

or before April 17 2018, the undersigned landlord will commence summary proceedings to evict you therefrom.

PLEASE TAKE FURTHER NOTICE that this Notice is being served without prejudice to additional information that may be obtained and without waiving the Landlord's rights.

PLEASE TAKE FURTHER NOTICE, that you have ten (10) days from receipt of this Notice within which to respond to the Landlord regarding the above charges.

PLEASE TAKE FURTHER NOTICE that in the event a judicial proceeding for eviction is instituted against you, you may present a defense to that proceeding.

Dated: Bronx, New York
       March 26 2018

                                    KENMORE ASSOCIATES, L.P., Landlord

                              By:   _____
                                    MOLLY MATTIMORE
                                    Registered Managing Agent


JASON D. BOROFF & ASSOCIATES, PLLC
Attorneys for Landlord
349 East 149th Street, Suite 703
Bronx, New York 10451
(718) 475-7888


Additional Mailing
DEPARTMENT OF HOUSING PRESERVATION & DEVELOPMENT
100 Gold Street
New York, New York 10038



**NYC Department of Buildings**

Premises: 143 EAST 23 STREET MANHATTAN          Filed At: 145 EAST 23 STREET , MANHATTAN , NY 10010

BIN:          Block: 879   Lot: 27                         Community Board: 106

## ECB Violation Summary                                        **VIOLATION OPEN**

ECB Violation Number: 35255131M

Severity: CLASS - 1                              Certification Status: CERTIFICATE DISAPPROVED

Penalty Balance Due: $0.00                        Hearing Status: PENDING

## Respondent Information

Name:            KENMORE ASSOCIATES LP

Mailing Address:  243 WEST 30 STREET , NEW YORK , NY 10001

## Violation Details

Violation Date:        02/06/2018          Violation Type:    CONSTRUCTION

Served Date:           02/09/2018          Inspection Unit:   OFFICE OF THE BUILDING MARSHALL

| Infraction Codes | Section of Law | Standard Description |
|---|---|---|
| 101 | 28-105.1 | WORK WITHOUT A PERMIT |

Specific Violation Condition(s) and Remedy:

PLUMBING WORK W/O PERMIT.WORK NOTED:AT TIME OF INSPECTION,WATER&WASTELINES ARE BENT RETRO FITTED TO ACCOMODATE NEW CABINETS&COUNTERTOPS INKITCHENS ON SECOND FL.NO APPS SUMITTED,NO PERMITS ISSUED FOR THIS WORK

Issuing Inspector ID:    2694                  DOB Violation Number:
                                               020618PLONMCJ02

Issued as Aggravated Level:  NO

## Dept. of Buildings Compliance History and Events

Certification Status:      CERTIFICATE DISAPPROVED          Compliance On:

Certification Submission Date:        03/14/2018      Certification Disapproval Date: 03/14/2018

## ECB Hearing Information

Scheduled Hearing Date/Time:  05/31/2018  8:30      Hearing Status:    PENDING

## ECB Penalty Information

Penalty Imposed:      $0.00

Adjustments:          $0.00          Amount Paid:      $0.00

Penalty Balance Due:  $0.00

If you have any questions please review these            , the            , or call the 311 Citizen Service Center by

**NEW YORK CITY TRANSIT**



Worker's Compensation Benefits Imprest Fund
130 Livingston Street - Room 7085
Brooklyn, New York 11201

**Claim Number**    TA201500704
**Check Number**    502349

*Date of Issue*    05/23/2017
*Payee Name*    BRIAN BURKE

| | |
|---|---|
| 11,159.37 | PAYMENT OF WORKERS' COMPENSATION BENEFITS OF 11159.37 FOR 04/07/2015 - 07/13/2015 (LAST DAY OF PERIOD IS NOT INCLUDED IN PAYMENT) USERID: SGI AWARD 4/7/15-7/13/15@ $808.65 |

Brian Burke, *Pro Per*
145 EAST 23RD STREET APT. 4R
NEW YORK, NY 10010
646-434-8513 briantburke@gmail.com


UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK


BRIAN BURKE, Plaintiff,        ) Case#18-cv-4496(PGG)(GWG)
                               )
vs.                            ) AFFIRMATION OF SERVICE
                               )
VERIZON COMMUNICATIONS,        )
                               )
INC., *ET AL.*,                )
                               )
         Respondents

———————————————————————————


**<u>AFFIRMATION</u>**

I declare, certify, verify, and state under penalty
of perjury that the foregoing is true and correct.
Executed on Wednesday, July 18, 2018_____/S/:

I served the responding parties, by Counsel, with
the attached Amended Complaint and Exhibits. Daniel
May, 99 Park Avenue, New York, NY 10016, Joseph Rizza
100 Church St. New York, NY 10007, Jeffery N. Rejan 185

Madison Avenue fl 4 New York, NY 10016, Daniel Chiu 130

Livingston Street Fl 12 Brooklyn, NY 11201, Christopher

Cafaro 840 Franklyn Ave. Garden City, NY 11530-7677,

Steven C. Farkas 100 Crossways Park Drive West Suite 200

Woodbury, NY 11797 by USPS.

Dated 07/18/2018

Brian Burke

AFFIRMATION OF SERVICE - 2