UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN BURKE,

                Plaintiff,

-against-

VERIZON COMMUNICATIONS, INC.;
HOUSING & SERVICES, INC.;
KENMORE HOUSING DEVELOPMENT
FUND CORPORATION; KENMORE
HOUSING CORPORATION; KENMORE
ASSOCIATES, L.P.; NEW YORK CITY
TRANSIT AUTHORITY; NEW YORK
CITY HEALTH & HOSPITALS
CORPORATION (BELLEVUE); NEW
YORK CITY POLICE DEPARTMENT;
NEW YORK CITY FIRE DEPARTMENT;
RYAN CAMIRE L.C.S.W.; CITY
UNIVERSITY OF NEW YORK;
TRANSPORT WORKERS UNION
LOCAL 100; MADELINE O'BRIEN;
JOHN/JANE DOE; DERICK
ECHEVARRIA; JOHNSON CONTROLS,
INC.; THE CITY OF NEW YORK; AND
THE ATTORNEY GENERAL OF NEW
YORK

                Defendants.

**ORDER**

18 Civ. 4496 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      Pro se Plaintiff Brian Burke brings this action alleging a myriad of federal and state law claims, including violations of Section 1983, the Racketeer Influenced and Corrupt Organizations Act, the Americans with Disabilities Act, the False Claims Act, and various constitutional provisions. The Complaint also pleads state law claims for, inter alia, defamation, medical malpractice, fraud, theft, assault, tortious interference with prospective economic advantage, retaliatory termination, retaliatory attempted eviction, state and city False Claims Act

violations, New York State Human Rights Law ("NYSHRL") violations, New York City Human Rights Law ("NYCHRL") violations, breach of contract, and breach of the duty of fair representation. His claims relate primarily to the loss of his job with the New York City Transit Authority, attempts to evict him from his apartment, and the denial of pension benefits.

Defendants Verizon Communications, Inc. ("Verizon"), the New York City Transit Authority, the New York City Health & Hospitals Corporation (Bellevue), Ryan Camire L.S.C.W., the Transport Workers Union Local 100, Derick Echevarria, the City of New York (the "City"), the New York City Police Department ("NYPD"), and the New York City Fire Department ("FDNY") moved to dismiss. (See Dkt. Nos. 32, 42, 45, 50, 57, 82) This Court granted Defendants' motions (see Mar. 29, 2019 Order (Dkt. No. 107)), and Plaintiff has moved for reconsideration. (Dkt. No. 109) For the reasons stated below, Plaintiff's motion will be denied.

## BACKGROUND

I. **FACTUAL ALLEGATIONS**

Plaintiff Brian Burke worked for the New York City Transit Authority for seventeen years as a train operator. He has lived at 145 East 23rd Street, Apartment 4R, New York, New York since December 7, 1989. (Am. Cmplt. (Dkt. No. 38) at 3 & ¶ 1)[1] Plaintiff alleges that Defendants Verizon, Housing & Services, Inc., Kenmore Housing Development Fund Corporation, Kenmore Housing Corporation, and Kenmore Associates, L.P. "are the putative owners" of his apartment building. (Am. Cmplt. at 5) Plaintiff alleges that the "Federal Government necessarily assumed control/title" of his apartment in 1994 "due to criminal

---

[1] All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

activity/hazardous conditions known/initiated" by the drug trafficker Tuong Dinh Tran.  (Id. ¶¶ 2-3)  Plaintiff further alleges that instead of allowing "the existing tenants to purchase their apartment[s]," the Federal Government secretly and illegally "transfer[ed] subject property to the wealthiest Corporation in New York, Verizon."  (Id. ¶ 5)  Verizon "paid nothing for the property," and although it "allegedly put in 8 figures for a Major Capital Improvement," that money was "mostly stolen by H&S, Inc. principles [sic] (including convicted Drug Trafficker Larry Oaks)."  (Id.)

Plaintiff further alleges that Verizon at some point "hired Housing & Services, Inc. to act as [its] 'Managing Agent'" for the apartment building, and that Housing & Services, Inc. then "continuously engaged in said willful, intentional (with scienter) unlawful, harmful, dangerous fraudulent, etc., misconduct [ever] since."  (Id. ¶ 6)  Plaintiff attempted to inform Verizon of its agent's unlawful conduct, but Verizon allegedly retaliated against Plaintiff "via [its] employee of sub-agent H&S, Francesca Rossi L.C.S.W., [who] ordered/instructed Bellevue Hospital Mobile Crisis Unit to perform witting, intentional Defamation/Defamation per se/Medical Malpractice (which was done) and attempted to have Plaintiff removed from home without court order, cause, probable cause (in a corrupt misuse/attempted malpractice/maladaptation of NYS Mental Hygiene Law/Practice)."  (Id. ¶ 8 (citation omitted))

Plaintiff further alleges that on February 7, 2014, Defendant Ryan Camire, a licensed clinical social worker at Bellevue Hospital, appeared at Plaintiff's apartment without notice, at Verizon's request, to conduct an evaluation of Plaintiff.  (Id. ¶ 9)  Plaintiff told Camire that he did not "require [his] services," but Plaintiff acquiesced to the evaluation "in order not to be removed/tased/arrested/drugged that day, etc., for this clearly malicious, unwarranted, retaliatory (for Protected Activity) 'swatting.'"  (Id.)  Plaintiff further alleges that Camire

3

"conferr[ed] before, during and after the 'evaluation' with his actual client/'patient' Ms. Rossi [and] proceeded to commit DELIBERATE MALPRACTICE/DEFAMATION (PER SE) in order to 'do a solid' in helping to strip this law abiding Tenant/Civil Servant of ALL CONSTITUTIONAL RIGHTS."  (Id. (capitalization in original) (emphasis omitted))

The alleged defamatory statements are recorded in the social worker's chart and include, inter alia, that Plaintiff appeared "unkempt and disheveled"; suffers from "[p]ersecutory delusions" and "[p]aranoid ideation"; "[i]mpulsively sends emails to staff, public officials re: perceived mistreatment"; and "has a complex delusional system involving the building staff and owners, and how they are defrauding the State of New York and the taxpayers." (Id. ¶¶ 12, 14) The social worker's chart concludes that Plaintiff "has worked for fourteen years without incident and he must have annual PE, random drug testing and vision screening and he is still employed.  It would neither be [Ms. Rossi's] role or that of the [Mobile Crisis Unit] at this juncture to contact employer [because] Plaintiff does not at this time pose a threat of serious physical harm to himself or to others [and] there is no justification for violating the patient's confidentiality by discussing with the MTA.  Patient does need to be closely monitored [because] patient could escalate . . . if he becomes too stressed. . . ."  (Id. ¶ 19)  Plaintiff complains that this evaluation was prepared in secret and was never shared with him.  (Id. ¶¶ 16, 23)

Plaintiff further alleges that on June 14, 2016, at Bellevue Hospital, Dr. D Harshad Bhatt repeated these same defamatory statements to Plaintiff.  (Id. ¶¶ 20, 27)  Plaintiff alleges that he did not receive a copy of this defamatory evaluation until May 22, 2017, and did not obtain an even "more defamatory" evaluation until August 30, 2017.  (Id. ¶ 33)  Plaintiff claims that at some point "Verizon Defendants (Ms. Rossi and/or others) went to Plaintiff's employer, conveying their false, conjured Defamation, in order to harm/terminate/bankrupt, in

4

order to evict." (Id. ¶ 34) MTA subsequently terminated Plaintiff's employment as a train operator. (Id.)

As to Defendant Johnson Controls, Inc., Plaintiff alleges that it owns the Simplex "fire system" or "smoke alarm" installed in his apartment, and that Johnson Controls "installed, maintained and/or manufactured" that alarm. (Id. at 5-6 & ¶ 32) Plaintiff claims that on July 14, 2016, the smoke alarm "went off, for no reason, at three (3) am until staff arrived at 9am." (Id. ¶ 32) The alarm was removed and Plaintiff "requested a Reasonable Accommodation" for the alarm not to "be reinstalled." (Id.) "Instead the Verizon Defendants again 'swatted' Plaintiff/Tenant and gave NYPD/FDNY a false 911 call to gain unwarranted access" in order to reinstall the smoke alarm. (Id.)

When "NYPD/FDNY arrived," Plaintiff allowed them in but requested that they "fil[e] a criminal complaint against the criminal Verizon." (Id.) He alleges that "they refused," both because they refuse all such requests from tenants in his apartment building, and because they never file criminal complaints against Verizon, despite Verizon having "a corrupt, mafia-like owner/managing agent [that has] turn[ed] [the apartment building] into a prison/gulag, treating the 'tenants' as chattel." (Id.) According to Plaintiff, Defendants NYPD, FDNY, and the City are all "complicit, to varying degree, with NYC [Transit Authority] and Verizon in the Depr[i]vation of Rights Under Color of Law, Retaliatory, unlawful, contract violating termination, Defamation, [and] Medical Malpractice" that caused Plaintiff injury, including threats to unlawfully evict or remove him from his "rent stabilized home of" more than 28 years. (Id. at 6)

As to Defendants New York City Transit Authority (the "Transit Authority"), Transport Workers Union Local 100 (the "Union"), and Derick Echevarria, a Union employee,

5

Plaintiff alleges that they are violating the "undisputed Contract Bargaining Agreement[] between the parties/Defendants." (Id. ¶ 33 (emphasis omitted)) According to Plaintiff, these Defendants "conspired via sins of omission and commission, to deprive Plaintiff of his lawful Civil Service job . . . , wages, future wages/benefits, good name, etc." (Id.)

## II.     PROCEDURAL HISTORY

The Complaint was filed on May 21, 2018, and alleges defamation, medical malpractice, fraud, theft, assault, breach of contract, and breach of the duty of fair representation, and violations of Section 1983, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Americans with Disabilities Act (the "ADA"), and various provisions of the U.S. Constitution. (Cmplt. (Dkt. No. 1)) The Amended Complaint was filed on July 18, 2018. (Am. Cmplt. (Dkt. No. 38))

Verizon, the Transit Authority, the New York City Health & Hospitals Corporation (Bellevue), Ryan Camire, the Union, Derick Echevarria, the City of New York, the NYPD, the FDNY, and Johnson Controls moved to dismiss. (See Dkt. Nos. 32, 42, 45, 50, 57, 82, 91) On March 29, 2019, this Court granted Defendants' motions. (Dkt. No. 107) On April 15, 2019, Plaintiff moved for reconsideration. (Dkt. No. 109)

## DISCUSSION

## I.     LEGAL STANDARD

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362,

365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted)). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). "To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader, 70 F.3d at 257).

Local Rule 6.3, which addresses motions for reconsideration, is intended to "'"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'" Id. (quoting S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988))) (alteration in original). "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." Id. (citing

Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)).

## II. ANALYSIS

Because Defendants' motions to dismiss raised different grounds, this Court will address Plaintiff's motion for reconsideration separately as to each set of Defendants.

### A. Bellevue Hospital Defendants

Plaintiff brought defamation, medical malpractice, and Section 1983 claims against the New York City Health and Hospitals Corporation and Ryan Camire (collectively, the "Bellevue Defendants"). (See Mar. 29, 2019 Order (Dkt. No. 107) at 8-15) He raises several arguments as to why this Court should grant reconsideration as to these Defendants.

#### 1. Statute of Limitations

First, Plaintiff argues that the "incident on February 7, 2014 [ – when social worker Camire evaluated Plaintiff at his apartment – ] . . . is not why we are here." According to Plaintiff, the evaluation "was mere cover for Mr. Camire . . . to assist [the] Verizon Defendants to unlawfully dispossess [Plaintiff]." (Pltf. Br. (Dkt. No. 109) at 8) Plaintiff's argument on this point could be understood to imply that the February 7, 2014 incident is not time-barred, because it is connected to subsequent incidents under the "continuing violations" doctrine. This Court has previously considered and rejected any such argument, finding that "the 2014 incident and the 2016 incident alleged by Plaintiff are discrete acts, and thus the continuing violations doctrine does not make Plaintiff's claim concerning the 2014 incident timely." (Mar. 29, 2019 Order (Dkt. No. 107) at 9 n.5) Accordingly, this rehashed argument provides no basis for reconsideration.

Plaintiff also argues that the Bellevue Defendants had "a clear 'pattern and practice' [of] concealment," and offers as evidence that his Bellevue Hospital "medical records show an alleged hernia treatment and/or surgery in 2000," but Plaintiff "has never (yet) had, or been treated for, any hernia or had any surgery of any kind." (Pltf. Br. (Dkt. No. 109) at 8-9) Plaintiff then refers to "identity theft," without explanation. (Id. at 10) The Court understands Plaintiff's reference to these matters as another argument for tolling, based on a theory of unclean hands or willful concealment. This Court previously ruled that "Plaintiff has alleged no facts regarding his unclean hands and willful concealment arguments . . . ." (Mar. 29, 2019 Order (Dkt. No. 107) at 10) Accepting Plaintiff's representation that his medical records mistakenly refer to "hernia treatment and/or surgery in 2000," Plaintiff does not explain how this fact supports a claim of unclean hands or willful concealment. In sum, the alleged mistaken reference to hernia treatment or surgery in Plaintiff's medical records does not support his motion for reconsideration.

With respect to his defamation claim against the Bellevue Defendants, Plaintiff argues that that claim is timely, because "[t]he defamatory information was not 'published or uttered to a third party' until [it was] sent to a third party, in late May, 2017." (Pltf. Br. (Dkt. No. 109) at 11-12) But Plaintiff does not allege in the Amended Complaint that the alleged defamatory information was not published until late May 2017. Instead, the Amended Complaint states that Plaintiff "received [the defamatory information] . . . on May 22, 2017." (Am. Cmplt. (Dkt. No. 38) at 42) And Plaintiff has repeatedly asserted that the alleged defamatory information was published in 2016, not in 2017. (See Pltf. Opp. Br. (Dkt. No. 76) at 8-9, 11, 13, 14) Plaintiff cannot now "plug[] the gaps of a lost motion" with new allegations

9

premised on evidence that was previously available, but not utilized.  See RST (2005) Inc., 597 F. Supp. 2d at 365; see also Davidson, 172 F. Supp. 2d at 461.

    **2.**    **Section 1983 Claim**

Plaintiff argues that he has alleged sufficient facts to adequately plead a Section 1983 Monell claim against the New York City Health and Hospitals Corporation, because he has cited "four [] instances of willful concealment as a policy or custom." (Pltf. Br. (Dkt. No. 109) at 13)  The only new allegation regarding this claim concerns the inaccurate reference to hernia treatment or surgery in Plaintiff's medical records. (Id.)  As this Court has previously stated, however, "Plaintiff has not alleged facts that plausibly show how any policy, custom, or practice of the New York City Health and Hospitals Corporation caused his eviction, the loss of his job, or the loss of his pension benefits." (Mar. 29, 2019 Order (Dkt. No. 107) at 14)  The allegation regarding the reference to hernia treatment and/or surgery in Plaintiff's medical records has no nexus to Plaintiff's alleged injuries, does not support a Monell claim, and provides no basis for granting Plaintiff's motion for reconsideration.

    **3.**    **Medical Malpractice Claim**

In support of his medical malpractice claim, Plaintiff argues that Dr. Bhatt's "[w]illful [c]oncealment deviates from accepted medical practice." (Pltf. Br. (Dkt. No. 109) at 17)  However, this Court has previously noted that Plaintiff has "not pled facts explaining what Dr. Bhatt did that deviated from accepted medical practice." (Mar. 29, 2019 Order (Dkt. No. 107) at 14-15)  Plaintiff has not cured this defect.

\*    \*    \*    \*

Because Plaintiff has offered no new factual allegations or legal argument that cures the defects in his claims against the Bellevue Defendants, his motion for reconsideration will be denied as to the Bellevue Defendants.

### B.     NEW YORK CITY, THE NYPD, AND THE FDNY

Plaintiff alleges defamation, medical malpractice, and Section 1983 claims against the City of New York, the NYPD, and the FDNY. (See Mar. 29, 2019 Order (Dkt. No. 107) at 15-18) He raises a variety of arguments as to why reconsideration should be granted as to these claims.

#### 1.     NYPD and FDNY

Plaintiff argues that his claims against the NYPD and the FDNY should not be dismissed, because "[t]he Seventh Amendment requires a jury trial (when requested)." (Pltf. Br. (Dkt. No. 109) at 18-19)  In the March 29, 2019 Order, this Court found that the "NYPD and [the] FDNY must be dismissed because they are non-suable entities." (Mar. 29, 2019 Order (Dkt. No. 107) at 15)  Although the Seventh Amendment provides a right to a jury trial, "there is no unmitigated right to a trial in every case, as cases may be decided on a motion where there are no disputed issues of fact. A litigant is not entitled to a jury trial simply because he wants a forum to espouse his views." Kashelkar v. Rubin & Rothman, 97 F. Supp. 2d 383, 390 (S.D.N.Y. 2000), aff'd sub nom. Kashelkar v. Ruben & Rothman, 1 F. App'x 7 (2d Cir. 2001).  Here, Plaintiff has no right to a jury trial concerning his claims against the NYPD and the FDNY, because they are non-suable entities.  Accordingly, Plaintiff's Seventh Amendment argument provides no basis for granting his motion for reconsideration.

#### 2.     Due Process and Equal Protection Claims

Plaintiff alleges wrongdoing by the managing agent of his building, and argues that the police "are told 'all' [t]enants at this address suffer from some sort of mental illness and

11

thus to not take any criminal complaint from them . . . ." (Pltf. Br. (Dkt. No. 109) at 19-22) This Court ruled in the March 29, 2019 Order, however, that Plaintiff's claim of differential treatment by the NYPD was not supported by factual allegations. See Mar. 29, 2019 Order (Dkt. No. 107) at 17. Nothing in Plaintiff's motion for reconsideration addresses this defect.

### 3. *Monell* Liability

In his moving brief Plaintiff states, for the first time, that he "has numerous recordings, going back more than 15 years, of Police Officers from the local precinct refusing to take . . . criminal complaints against their friends working for [Housing] and Services, Inc." According to Plaintiff, these "half a dozen incidents" constitute a "presumably unwritten [] policy." (Pltf. Br. (Dkt. No. 109) at 21) All of these alleged incidents are associated with a single precinct, however, and Plaintiff has not alleged facts suggesting a City-wide policy or practice. In any event, the purpose of a motion for reconsideration is not to "plug[] the gaps of a lost motion" with new allegations premised on evidence that was previously available, but not utilized. See RST (2005) Inc., 597 F. Supp. 2d at 365; see also Davidson, 172 F. Supp. 2d at 461.

* * * *

Plaintiff has provided no basis for this Court to grant reconsideration as to dismissal of the claims against the City of New York, the NYPD, or the FDNY.

### C. JOHNSON CONTROLS

Plaintiff argues that Defendant Johnson Controls "initiated, along with the Verizon Defendants, to 'swat' plaintiff, thus acting under [c]olor of [l]aw." (Pltf. Br. (Dkt. No. 109) at 23) According to Plaintiff, Johnson Controls "'has obtained significant aid from state officials' in furtherance of the challenged action" in that "the subject address is under the complete control of a city agency . . . ." (Id. (quoting Lugar v. Edmondson Oil, 457 U.S. 922,

937 (1982))) But Plaintiff does not provide any factual support for his claim that Johnson Controls has received "significant aid" from New York State. Accordingly, there is no basis for this Court to disturb its prior ruling that Johnson Controls is a private entity that "cannot be held liable for constitutional violations . . . ." (Mar. 29, 2019 Order (Dkt. No. 107) at 18)

Plaintiff now seeks to implicate a different company, Fire Response Inc., which "last February, 2018 has installed a vastly more malfunctioning 'safety device' . . . ." (Pltf. Br. (Dkt. No. 109) at 22) To the extent Plaintiff is seeking to add a claim against Fire Response, that effort appears futile. Given that Fire Response – like Johnson Controls – is a private actor, it is not liable for constitutional violations under Section 1983 for the same reasons that Johnson Controls is not liable for constitutional violations under Section 1983.

In sum, Plaintiff has provided no basis for this Court to reconsider its order dismissing Plaintiff's claims against Johnson Controls.

### D. NEW YORK CITY TRANSIT AUTHORITY

Plaintiff also asks this Court to reconsider its order dismissing his claims against the New York City Transit Authority.

#### 1. RICO

In support of his RICO claim, Plaintiff now argues that Daniel Chiu – counsel for the New York City Transit Authority – "submitted two affidavits, on knowing perjury . . . attesting that Plaintiff has been paid the substantial . . . contractual [d]ifferential payments. . . ." (Pltf. Br. (Dkt. No. 109) at 27) The Amended Complaint describes these differential payments as "a hard fought provision in the [Collective Bargaining Agreement] call[ing] for 'differential' pay for covered members with substantiated, paid [i]njury [o]n [d]uty claims, such as Plaintiff."

13

(Am. Cmplt. (Dkt. No. 38) at 41) Plaintiff contends that Chiu has committed "[o]bstruction of [j]ustice, [a] predicate felon[y] under 18 U.S.C. §§ 1961-1968." (Pltf. Br. (Dkt. No. 109) at 28)

As discussed above, a motion for reconsideration cannot be premised on new factual allegations premised on evidence that was previously available. See RST (2005) Inc., 597 F. Supp. 2d at 365; see also Davidson, 172 F. Supp. 2d at 461.

But even if this Court were to consider Plaintiff's new factual allegation about obstruction of justice, his RICO claim would remain defective. Plaintiff has not pled facts demonstrating "that the person and the [alleged racketeering] enterprise . . . [are] distinct." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994). "[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented." Id.

Here, Plaintiff appears to allege that Chiu was acting as an employee and agent of the Transit Authority. A RICO claim may not be predicated on such allegations. Id.

### 2. **State Law Claims**

Plaintiff contends that the Transit Authority violated the New York Civil Service Law, the New York State Human Rights Law, and the New York City Human Rights Law, because it placed him on "unwarranted" probation and engaged in other adverse employment actions "due to [his] [p]rotected [a]ctivity and acknowledged [d]isabilities. . . ." (Pltf. Br. (Dkt. No. 109) at 28) But Plaintiff has never provided factual support for his claim that any of his alleged injuries were the result of retaliation. Accordingly, it remains true "that Plaintiff has not pled facts showing how the [Transit Authority] violated these statutes." (Mar. 29, 2019 Order (Dkt. No. 107) at 21)

### 3. Breach of Contract

Plaintiff contends that he need not exhaust the remedies available to him under the applicable collective bargaining agreement before suing the Transit Authority for breach of contract, because his union has "violate[d] [its] [d]uty of [f]air [r]epresentation . . . ." (Pltf. Br. (Dkt. No. 109) at 25-26 (citing Jackson v. Regional Transit Service, 54 A.D.2d 305 (4th Dept. 1976) In Jackson, the court held that exhaustion does not bar a claim "provided that the employee can prove that the union as bargaining agent breached its duty of fair representation in the handling of the employee's grievance." Id. at 307.

Even if Plaintiff could establish a breach of the duty of fair representation, however, this Court would not have subject matter jurisdiction over Plaintiff's breach of contract claim. The Transit Authority is not diverse from Plaintiff and – with the dismissal of Plaintiff's RICO claim – there is no federal question claim against the Transit Authority.

\*     \*     \*     \*

Plaintiff has provided no basis for this Court to reconsider its order dismissing Plaintiff's claims against the Transit Authority.

### E. VERIZON

Plaintiff argues that Defendant Verizon "'has obtained significant aid from state officials,'" in that it obtained his apartment building "for free ($10) and [] with the Master Regulatory Agreement in which [the New York City Department of Housing Preservation and Development] retains specific rights to the property . . . ." (Pltf. Br. (Dkt. No. 109) at 29) This Court understands Plaintiff to be implying that Verizon is a state actor, because its activities and those of the state are intertwined, and therefore Section 1983 claims can be brought against Verizon.

Courts have repeatedly rejected the notion that the mere receipt of state funding or the use of state-owned land permits an inference of entwinement.  See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 552 (2d Cir. 2001) ("[A] finding of state action may not be premised on the private entity's creation, funding, licensing, or regulation by the government."); Fisher v. Silverstein, No. 99 Civ. 9657 (SAS), 2004 WL 1933610, at *5 (S.D.N.Y. Aug. 30, 2004) ("Defendants have not cited – and the Court has not found – any authority to support the proposition that private action can be deemed state action by virtue of the lessor-lessee relationship or state funding."); Lattibeaudiere v. AMR Servs. Corp., No. CV 95 5269 (RJD), 1996 WL 518076, at *3 (E.D.N.Y. Sept. 3, 1996) (rejecting "the broad proposition endorsed by plaintiff, that leasing property from a government agency transforms a private actor into a state actor for purposes of section 1983 liability" (citing Wagner v. Metro. Nashville Airport Auth., 772 F.2d 227 (6th Cir. 1985))).  Accordingly, Plaintiff's suggestion that Verizon has received some benefit from New York State is not sufficient to salvage his Section 1983 claims against Verizon.

Even if Verizon were a state actor, this Court has already ruled that "the Amended Complaint pleads a host of confusing and fantastical allegations concerning Verizon, including that it has engaged in a myriad of illegal activities over the years."  (Mar. 29, 2019 Order (Dkt. No. 107) at 22)  Based on this conclusion, this Court "'dismissed[ed the] claim[s] as "factually frivolous" . . . .'"  (Id. (quoting Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011) (quoting Denton v. Hernandez, 504 U.S. 25, 32-33 (1992))))

Plaintiff has not pointed to any factual allegation or case law that this Court overlooked in assessing whether the allegations against Verizon were well-pleaded.  Accordingly,

there is no basis for this Court to reconsider its order dismissing Plaintiff's claims against Verizon.

F. **UNION DEFENDANTS**

As to Defendants Transport Workers Union Local 100 and Derick Echevarria (collectively, the "Union Defendants"), Plaintiff contends that "this court [should] retain supplemental jurisdiction over TWU Local 100 as a necessary/required party for the [b]reach of [c]ontract/[w]age [t]heft [claims.]" (Pltf. Br. (Dkt. No. 109) at 30) This appears to be a reference to Plaintiff's claim that the Union breached its duty of fair representation. As discussed in the Court's March 29, 2019 Order, this Court lacks subject matter jurisdiction over Plaintiff's fair representation claim, because fair representation claims brought by public employees such as Plaintiff do not arise under federal law. (Mar. 29, 2019 Order (Dkt. No. 107) at 23) As is also discussed above, to the extent that Plaintiff wishes to pursue a breach of contract claim against the Transit Authority, this Court lacks jurisdiction over that claim. Accordingly, there is no basis to assert supplemental jurisdiction over the Union Defendants.

Plaintiff also contends, in a conclusory manner, that he has claims against the Union Defendants for conspiring "to deprive [Plaintiff] of his constitutional civil rights." (Pltf. Br. (Dkt. No. 109) at 30-31) This argument, which lacks any specifics, does not provide this Court with a basis to reconsider its March 29, 2019 Order.

III. **LEAVE TO AMEND**

Plaintiff seeks leave to file a Second Amended Complaint. (Pltf. Br. (Dkt. No. 109) at 8) The Second Circuit has cautioned that district courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112

(2d Cir. 2000). "'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.'" Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)).

Given the significant defects in the Amended Complaint – as outlined here and in this Court's March 29, 2019 Order – this Court concludes that granting leave to amend would be futile. Plaintiff has already amended his Complaint once. His papers evince a pattern of repeating arguments that have already been rejected by this Court. Nothing in Plaintiff's motion for reconsideration suggests that Plaintiff is capable of pleading valid claims against the Defendants who have moved to dismiss. Accordingly, leave to amend will be denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for reconsideration is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 109).

Dated: New York, New York
      March 22, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge