UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN BURKE,

                       Plaintiff,

        -against-

VERIZON COMMUNICATIONS, INC.;
HOUSING & SERVICES, INC.;
KENMORE HOUSING DEVELOPMENT
FUND CORPORATION; KENMORE
HOUSING CORPORATION; KENMORE
ASSOCIATES, L.P.; NEW YORK CITY
TRANSIT AUTHORITY; NEW YORK
CITY HEALTH & HOSPITALS
CORPORATION (BELLEVUE); NEW
YORK CITY POLICE DEPARTMENT;
NEW YORK CITY FIRE DEPARTMENT;
RYAN CAMIRE L.C.S.W.; CITY
UNIVERSITY OF NEW YORK;
TRANSPORT WORKERS UNION
LOCAL 100; MADELINE O'BRIEN;
JOHN/JANE DOE; DERICK
ECHEVARRIA; JOHNSON CONTROLS,
INC.; THE CITY OF NEW YORK; AND
THE ATTORNEY GENERAL OF NEW
YORK

                   Defendants.

**<u>ORDER</u>**

18 Civ. 4496 (PGG) (GWG)

PAUL G. GARDEPHE, U.S.D.J.:

        <u>Pro se</u> Plaintiff Brian Burke has asserted numerous federal and state law claims

against more than a dozen defendants, including Housing & Services, Inc. ("HSI"); Kenmore

Housing Development Fund Corporation; Kenmore Housing Corporation; and Kenmore

Associates, L.P. (collectively, the "Kenmore Defendants").  On September 14, 2021, the

Kenmore Defendants moved for summary judgment.  (<u>See</u> Dkt. No. 177)  On November 10,

2021, this Court referred the Kenmore Defendants' motion to Magistrate Judge Gabriel W.

Gorenstein for a Report and Recommendation ("R&R").  (Dkt. No. 186)  On March 25, 2022,

Judge Gorenstein issued an R&R recommending that the Kenmore Defendants' motion for

summary judgment be granted.  (R&R (Dkt. No. 190))  Plaintiff has filed objections to the R&R.

(Pltf. Obj. (Dkt. No. 192))  For the reasons stated below, Plaintiff's objections will be overruled,

and the R&R will be adopted in its entirety.

**BACKGROUND**[1]

## I.      THE AMENDED COMPLAINT'S ALLEGATIONS AND THE R&R'S FACTUAL STATEMENT[2]

The Kenmore Defendants and former Defendant Verizon are allegedly the

"putative owners" of a building at 145 East 23rd Street in Manhattan – known as the "Kenmore"

– where Burke has lived since 1989.  (R&R (Dkt. No. 190) at 3)[3]  Burke's claims against the

Kenmore Defendants relate primarily to two incidents:  (1) a visit by two social workers to

Burke's apartment, which resulted in an allegedly defamatory medical report containing a false

diagnosis of "delusional disorder," which Burke alleges was wrongfully shared with his

employer; and (2) efforts by the Kenmore Defendants to replace a defective smoke detector in

Burke's apartment.  (Id. at 3-7)

Burke alleges that Verizon hired HSI to act as Verizon's "'Managing Agent' . . .

and that HSI 'has continuously engaged in [] willful, intentional (with scienter) unlawful,

harmful, dangerous, fraudulent, etc., misconduct'" with respect to the Kenmore.  (Id. (quoting

---

[1]  The Amended Complaint's allegations are discussed in greater detail in two prior orders granting other Defendants' motions to dismiss.  (See Mar. 29, 2019 Order (Dkt. No. 107) at 2-6; Nov. 6, 2020 Order (Dkt. No. 153) at 2-3)

[2]  Plaintiff has objected to certain portions of Judge Gorenstein's factual statement.  (Pltf. Obj. (Dkt. No. 192))  Plaintiff's objections will be overruled for reasons explained below. Accordingly, this Court adopts Judge Gorenstein's factual statement in full.

[3]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

2

Am. Cmplt. (Dkt. No. 38) ¶ 6)  Plaintiff has been "in litigation with [HSI,] Verizon's Shell Company, for most of this century."  (Am. Cmplt. (Dkt. No. 38) ¶ 7)  In retaliation for attempting to contact Verizon about HSI's criminal activity at the Kenmore, Defendant Francesca Rossi (a social worker employed by HSI) "ordered/instructed Bellevue Hospital [New York City Health & Hospitals Corporation] . . . to perform witting, intentional Defamation/Defamation per se/Medical Malpractice . . . and attempted to have Plaintiff removed from [his] home without [a] court order" (id. ¶ 8), and to terminate Burke's employment with the New York City Transit Authority (the "NYCTA") as a train operator.  (R&R (Dkt. No. 190) at 4)

Burke further alleges that New York City Health & Hospitals Corporation (Bellevue) social worker Ryan Camire and Rossi appeared at his home between 10:00 and 10:30 a.m. on February 7, 2014, and – after speaking with him – prepared a defamatory mental health report stating, inter alia, that Plaintiff had "previously been hospitalized for psychosis, [suffered from delusions,] and that [D]efendants communicated this inaccurate information to Burke's then-employer, the NYCTA."  (Id.)  Judge Gorenstein notes that Burke has produced (1) "some relevant medical records, including Camire's report from his wellness check of Burke" (id.); (2) "an affidavit from his sister stating that she never told Bellevue Hospital, the Kenmore [D]efendants, or their employees that Burke had been hospitalized for psychosis" (id. at 5 (citing Pltf. Opp., Ex. C (Kelly A. Burke Aff.) (Dkt. No. 184) at 36-40)); (3) "an affidavit from Burke's brother-in-law stating his belief that Burke is a 'moral, sane, fair, intelligent person'" (id. (quoting Pltf. Opp., Ex. B (Dann M. Church Aff.) (Dkt. No. 184) at 35)); and (4) "a letter from [Burke's] psychologist [Dr. Kari Sherman] stating that Burke 'has beliefs that against doctors' orders Ms. Rossi may have released information to his employer.'"  (Id. (quoting Apr. 5, 2021 Affm. of Service, Ex. C (Sherman Ltr.) (Dkt. No. 169) at 19-20))  The R&R notes however that

Burke has provided "no evidence of any communication between [the Kenmore Defendants] and the NYCTA." (Id.)

According to the Kenmore Defendants, in a February 3, 2014 email to more than a hundred individuals – including Verizon and HIS employees, and local, state, and federal officials – Burke "expressed [his] frustration with attempts by HSI maintenance workers to perform work in his apartment." (Id. at 6) On February 7, 2014, Rossi contacted the New York City Health Department, and asked that the "mobile crisis unit assess" Burke. (Id.) This appears to be the visit that led to the allegedly defamatory mental health report prepared by social worker Camire.

Burke also alleges that the Kenmore Defendants "'swatted' him 'and gave NYPD/FDNY a false 911 call to gain unwarranted access'" to his apartment in relation to a "smoke alarm" that malfunctioned on July 24, 2016. (Id. at 5 (quoting Am. Cmplt. (Dkt. No. 38) ¶ 32) Burke claims that this conduct constitutes "'a pattern of unconstitutional denial of Due Process, or Equal Protection.'" (Id. at 6 (quoting Am. Cmplt. (Dkt. No. 38) ¶ 32)) In support of this claim, Burke has submitted (1) a January 31, 2019 email from Francesca Rossi which references Burke's request for a "reasonable accommodation" that no smoke alarm work be completed in his apartment (id. (citing Pltf. Opp., Ex. D (Dkt. No. 184) at 41)); (2) a June 6, 2018 email from Almir Lalicic which references an incident in which the police were called by HSI employees in order to gain access to Burke's apartment to complete smoke alarm related work (see id. at 5-6 (citing Ptlf. Opp., Ex. E (Dkt. No. 184) at 42); and (3) a transcript of an

administrative hearing regarding citations issued to Kenmore Associates for performing electrical and plumbing work without a permit.  (Id. at 6 (citing Pltf. Opp., Ex. F (Dkt. No. 184) at 43-53).[4]

The Kenmore Defendants have submitted an incident report which describes an HSI employee and technician's efforts to enter Burke's apartment on July 14, 2016 and replace a smoke detector.  (Id. at 7)  After Burke refused entry, the HSI employee contacted the New York City Police Department, and Burke then allowed the work to be completed.  (Id.)

Judge Gorenstein interprets "Burke's § 1983, Racketeer Influenced and Corrupt Organizations Act ("RICO"), False Claims Act, and [Health Insurance Portability and Accountability Act ("HIPAA")] claims to be premised on [the Kenmore Defendants'] request for a wellness check on Burke and their alleged communication of his health information to the NYCTA."  (Id. at 7)  Judge Gorenstein understands Burke's Americans with Disabilities Act ("ADA") "claim to be premised on [the Kenmore Defendants'] attempts to install and/or maintain a smoke detector in Burke's apartment." (Id. at 7-8)

## II.   PROCEDURAL HISTORY

The Complaint was filed on May 21, 2018 and asserts federal and state law claims against more than a dozen defendants.  (Cmplt. (Dkt. No. 1))  The Amended Complaint was filed on July 18, 2018.  (Am. Cmplt. (Dkt. No. 38))  All Defendants other than the Kenmore Defendants moved to dismiss, and this Court granted those motions to dismiss.  (See Mar. 29, 2019 Order (Dkt. No. 107) (dismissing claims against Verizon, the New York City Transit Authority, Bellevue Hospital, Ryan Camire, Local 100 of the Transport Workers Union, Madeline O'Brien, Derick Echevarria, the City of New York, the New York City Police

---

[4]  As to the administrative hearing transcript, Judge Gorenstein notes that "it is not clear which of [Burke's] claims this evidence is intended to support."  (Id.)

Department, the New York City Fire Department, and Johnson Controls); Nov. 6, 2020 Order

(Dkt. No. 153) (dismissing claims against the Attorney General of the State of New York and the

City University of New York))

   The Kenmore Defendants filed an answer to the Amended Complaint on August

7, 2018 (Kenmore Ans. (Dkt. No. 49)), and moved for summary judgment on September 14,

2021.  (Dkt. No. 177)  On November 10, 2021, this Court referred the motion to Judge

Gorenstein for an R&R.  (Dkt. No. 186)  On March 25, 2022, Judge Gorenstein issued an R&R

recommending that this Court grant the Kenmore Defendants' summary judgment motion.

(R&R (Dkt. No. 190))

   Plaintiff filed objections to the R&R on May 26, 2022.  (Pltf. Obj. (Dkt. No. 192))

The Kenmore Defendants filed an opposition to Plaintiff's objections on April 25, 2022.[5]  (Def.

Opp. (Dkt. No. 191))

## **DISCUSSION**

## I.  **LEGAL STANDARDS**

###   A.  **Review of a Magistrate Judge's Report and Recommendation**

   A district court reviewing a magistrate judge's report and recommendation "may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1).  "'The district judge evaluating a magistrate judge's

recommendation may adopt those portions of the recommendation, without further review,

where no specific objection is made, as long as they are not clearly erroneous.'"  Gilmore v.

Comm'r of Soc. Sec., 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v.

---

[5]  The Kenmore Defendants represent that they received Plaintiff's objections by mail on April
13, 2022, although they did not appear on the docket until May 26, 2022.  (Def. Opp. (Dkt. No.
191) at 1)

TD Waterhouse Inv. Servs., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).  A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed."  United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error."  IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and citations omitted)).

### B.    Summary Judgment Standard

Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment

purposes where the evidence is such that a reasonable jury could decide in the non-movant's

favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted).

"'[W]here the non[-]moving party will bear the burden of proof at trial, Rule 56 permits the

moving party to point to an absence of evidence to support an essential element of the

non[-]moving party's claim.'" Lesavoy v. Lane, 2008 WL 2704393, at *7 (S.D.N.Y. July 10,

2008) (quoting Bay v. Times Mirror Mags., Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

  In deciding a summary judgment motion, the Court "resolve[s] all ambiguities,

and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing

summary judgment." Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quotation

marks and citation omitted).  However, a "party may not rely on mere speculation or conjecture

as to the true nature of the facts to overcome a motion for summary judgment.  Mere conclusory

allegations or denials . . . cannot by themselves create a genuine issue of material fact where

none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quotation

marks, alterations, and citation omitted).  "'Assessments of credibility and choices between

conflicting versions of the events are matters for the jury, not for the court on summary

judgment.'" Eviner v. Eng, 2015 WL 4600541, at *6 (E.D.N.Y. July 29, 2015) (quoting Rule v.

Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)).  A moving party can demonstrate the absence of

a genuine issue of material fact "in either of two ways:  (1) by submitting evidence that negates

an essential element of the non-moving party's claim, or (2) by demonstrating that the non-

moving party's evidence is insufficient to establish an essential element of the non-moving

party's claim." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir.

2017) (quotation marks and citation omitted).

Pro se submissions are "construed liberally and interpreted to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks, emphasis, and citation omitted).  A pro se litigant must, however, still "meet the requirements necessary to defeat a motion for summary judgment."  Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks and citation omitted).

## II.   ANALYSIS

### A.   Objections to the R&R's Factual Statement

Burke objects to certain aspects of Judge Gorenstein's factual statement.  (Pltf. Obj. (Dkt. No. 192) at 3-7)  None of Burke's objections has merit.

In the R&R, Judge Gorenstein states that (1) "[t]he amended complaint is difficult to understand as it is replete with disjointed and meandering discussions of numerous discussions and topics"; and (2) "it is difficult to tell what claims [the Amended Complaint] makes against the Kenmore Defendants."  (Id. at 3-4 (quoting R&R (Dkt. No. 190) at 2-3))  Having reviewed the Amended Complaint, this Court finds Judge Gorenstein's description entirely accurate.[6]

---

[6] To the extent that Burke suggests that the Amended Complaint's lack of clarity would be cured in a second amended complaint, there is no reason to believe that further amendment would be productive, given "Plaintiff's well-established pattern of filing meritless lawsuits" and his habit of "'repeating arguments that have already been rejected by this Court.'"  (Nov. 6, 2020 Order (Dkt. No. 153) at 15-16 (quoting Mar. 22, 2020 Order (Dkt. No. 129) at 18)))

To the extent that Burke suggests that discovery should be re-opened (Pltf. Obj. (Dkt. No. 192) at 4), Judge Gorenstein correctly rejected that application.  In a July 2, 2021 order rejecting Plaintiff's motion to compel discovery from the Kenmore Defendants, Judge Gorenstein notes that the discovery deadline had previously been extended from February 26, 2021 to May 21, 2021.  (July 2, 2021 (Dkt. No. 165))  Judge Gorenstein also states that he had previously told the parties that the discovery deadline would not be extended again and that "'[u]ntimely [discovery] applications will be denied."  (Id. (citing Oct. 27, 2020 Order (Dkt. No. 152)))  Judge Gorenstein also notes that during discovery Plaintiff "made no applications to this Court concerning [the Kenmore] [D]efendants' purported failure to comply with any discovery requests."  (Id.)  In denying Burke's motion to compel, Judge Gorenstein concludes that Burke had "not shown any good cause for failing to raise the disputes before" the close of discovery.  On July 19, 2021,

Burke also objects to Judge Gorenstein's statement that "Burke alleges that Rossi contacted Bellevue in an attempt to 'establish . . . probable cause to kidnap/remove [Burke] in order to' evict him and end his employment with the NYCTA." (Pltf. Obj. (Dkt. No. 192) at 4-5); R&R (Dkt. No. 190) at 4 (quoting Am. Cmplt. (Dkt. No. 38) ¶ 9))  Burke complains that "[i]n fact [he] has alleged that HSI [] contacted Bellevue [and] that this crime[] . . . was orchestrated at the highest level of HSI, by Ms. Mattimore." (Pltf. Obj. (Dkt. No. 192) at 4-5)  But Judge Gorenstein accurately summarizes Burke's claim in Paragraph 9 of the Amended Complaint, which reads, in relevant part, as follows:

> On February 7, 2014 at approximately 10-1030am Mr. Ryan Camire, LCSW knocked on Petitioner's door . . . [O]n Information and Belief Mr. Camire (and Ms. Rossi), . . . performed [the wellness check and medical evaluation] for [the] Verizon Defendants to establish (unlawful, Due Process Clause Violating) "probable cause" to kidnap/remove Tenant/Civil Servant in order to (illegally) evict/terminate from employment. . . . Petitioner recorded a brief "evaluation" with Mr. Camire, in order not to be removed/tased/arrested/drugged that day, etc., for this clearly malicious, unwarranted, retaliatory [visit]

Am. Cmplt. (Dkt. No. 38) ¶ 9)  Given that Burke also pleads in the Amended Complaint that "the Verizon Defendants (Ms. Rossi and/or others) went to Plaintiff's employer, conveying their false, conjured Defamation, in order to harm/terminate/bankrupt, [and] evict [Burke,]" Judge Gorenstein's characterization of Burke's claim is accurate.  (See Am. Cmplt. (Dkt. No. 38) ¶ 34)

Pointing to a letter from his psychologist, Dr. Kari Sherman, Burke also complains about Judge Gorenstein's finding that he "'provides no evidence of any communication between [the Kenmore Defendants] and the NYCTA.'" (Pltf. Obj. (Dkt. No.

---

Burke moved for reconsideration of Judge Gorenstein's order denying his motion to compel. (Dkt. No. 169)  Judge Gorenstein denied reconsideration because of Burke's failure to cite to any "'matter or controlling decisions' that have been 'overlooked' as required by Local Civil Rule 6.3." (Dkt. No. 170)  To the extent that Burke appeals this determination, this Court finds no error in Judge Gorenstein's discovery rulings.

192) at 5-6, quoting R&R (Dkt. No. 190) at 5)  But Sherman's letter is not proof that the Kenmore Defendants communicated with the NYCTA; Sherman merely repeats Burke's unsupported belief that such a communication took place.  (R&R (Dkt. No. 190) at 5) (referencing Dr. Sherman's letter stating that "'Burke has beliefs that against the doctors' orders Ms. Rossi may have released information to his employer'" (quoting Apr. 5, 2021 Affm. of Service, Ex. C (Sherman Ltr.) (Dkt. No. 169) at 19-20)))

Finally, Burke objects to Judge Gorenstein's remark regarding a transcript Burke offers from a hearing conducted by the Office of Administrative Trials & Hearings ("OATH"). The hearing concerned "citations issued to Kenmore Associates for performing electrical and plumbing work without a permit."  (Id. at 6)  In his R&R, Judge Gorenstein comments that "it is not clear which of [Burke's] claims this evidence is intended to support."  (Id.)

In his objections, Burke contends that the transcript demonstrates that the Kenmore Defendants "conspired to Defraud OATH [and Burke] . . . by submitting two forged/false instruments," which Burke labels as "Civil RICO acts."  (Pltf. Obj. (Dkt. No. 192) at 6-7)  This objection is likewise without merit.  As an initial matter, Judge Gorenstein's remark about the transcript is not a proposed finding or recommendation, and thus provides no basis for an objection.  See Fed. R. Civ. P. 72(b)(2).  Moreover, for reasons explained below, the transcript is not evidence of fraud, of a RICO predicate, or any other form of malfeasance.

Accordingly, Burke's objections to Judge Gorenstein's factual statement are overruled.

B.    **Objections to Recommendation that the**
      **Kenmore Defendants be Granted Summary Judgment**

1.    **Section 1983 Claim**

As Judge Gorenstein notes, for a plaintiff to prevail on a Section 1983 claim, he

must show that a "state actor" or a "person acting under the color of state law" violated a right

secured by the Constitution or laws of the United States.  (R&R (Dkt. No. 190) at 10) (citing

West v. Atkins, 487 U.S. 42, 48-49 (1988)))  While the Kenmore Defendants are "not alleged to

be governmental entities," there are "three bases for finding a private entity has acted under color

of state law":

> (1) when the entity acts pursuant to the coercive power of the state or is controlled
> by the state ("the compulsion test"); (2) when the state provides significant
> encouragement to the entity, the entity is a willful participant in joint activity with
> the state, or the entity's functions are entwined with state policies ("the joint
> action test" or "close nexus test"); or (3) when the entity has been delegated a
> public function by the state ("the public function test").

(Id. (quoting Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008))

Judge Gorenstein concludes that Burke has offered no evidence "that there are

sufficient entanglements between [the Kenmore Defendants] and any government body such that

they may be treated as one and the same."  (Id. at 11)  Nor has he shown that the Kenmore

Defendants have been delegated a public function by the state.  (Id. (noting that the provision of

low-cost housing is "'not a public function within the meaning of section 1983, because the

provision of housing, for the poor or for anyone else, has never been the exclusive preserve [of]

the state'")  (quoting George v. Pathways to Hous., Inc., 2012 WL 2512964, at *4 (S.D.N.Y.

June 29, 2012)))  Because the state action requirement is an essential element of a Section 1983

12

claim, Judge Gorenstein recommends that the Kenmore Defendants be granted summary judgment on Plaintiff's Section 1983 claim.  (Id.)

Burke objects to this recommendation, arguing that he has alleged sufficient "entanglements" between the Kenmore Defendants and the state to demonstrate that the Kenmore Defendants "acted under color of state law" for purposes of Section 1983.  (Pltf. Obj. (Dkt. No. 192) at 16-17)  Burke points to (1) "the transfer of the property itself, owned prior by the People of the United States"; (2) a "long regulatory agreement governing all aspects of Kenmore (with NYC HPD)"; and (3) the "RICO acts themselves, involving [the other Defendants in this case]."  (Id.)

Burke's objections are not persuasive.  As to the City's sale of the building to Verizon and the "long regulatory agreement" that allegedly accompanied that sale, Burke has not proffered evidence that these matters bear any relation to the injuries he allegedly suffered at the hands of the Kenmore Defendants.  It "is not enough [] for a plaintiff to plead state involvement in 'some activity of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the activity that caused the injury' giving rise to the action."  Sybalski, 546 F.3d at 258 (quoting Schlein v. Milford Hospital, Inc., 561 F.2d 427, 428 (2d Cir.1977) (emphasis in Sybalski).

As to Burke's reference to the "RICO acts themselves" (Pltf. Obj. (Dkt. No. 192) at 16-17), this Court understands Burke to be referring to his allegation that Camire – a social worker employed by Bellevue (a state actor) – wrote the allegedly defamatory mental health report based on events that occurred when he accompanied Rossi to Burke's apartment.  (Am. Cmplt. (Dkt. No. 38) ¶ 9)  Even if Rossi shared Camire's report with the NYCTA – a theory that is not supported by any evidence – the fact that a Bellevue social worker prepared the mental

health report does not demonstrate that Bellevue "encouraged" Rossi or the Kenmore Defendants

to share Camire's report with the NYCTA. Indeed, this Court has previously found that

"Plaintiff has not alleged facts that plausibly show how any policy, custom, or practice of

[Bellevue]" harmed him. (Mar. 29, 2019 Order (Dkt. No. 107) at 14)

Because there is no evidence that any state actor played a role in any decision to

share Burke's confidential medical information with the NYCTA, there is no basis for this Court

to find the required state action. Accordingly, Plaintiff's objection on this point is overruled, and

this Court will adopt Judge Gorenstein's recommendation that the Kenmore Defendants be

granted summary judgment on Plaintiff's Section 1983 claim.

## 2. **RICO Claim**

As Judge Gorenstein notes, in order to maintain a civil RICO claim, a plaintiff

must show "'(1) a substantive RICO violation under § 1962; (2) injury to the plaintiff's business

or property, and (3) that such injury was by reason of the substantive RICO violation.'" (R&R

(Dkt. No. 190) at 11-12 (quoting UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d

Cir. 2010))) Moreover, "each subsection [of the RICO statute] includes as an element that the

defendant commit 'at least two acts of racketeering activity' within a ten-year period." (Id.

(quoting 18 U.S.C. § 1961(5))) Judge Gorenstein concludes that Burke has not proffered

evidence sufficient to create a material issue of fact as to whether the Kenmore Defendants

committed any predicate acts:

> While Burke makes complaints regarding the ownership of his residence, the
> repairs to his smoke alarm, invasion of privacy that he experienced in his home,
> and alleged defamatory statements, there are no allegations that could be viewed
> as constituting any of the listed predicate acts in 18 U.S.C. § 1961(1).
>
> We note further that while Burke's complaint suggests that there were financial
> improprieties associated with the transfer of the Kenmore's ownership from
> Verizon to defendants, see [Am. Cmplt.] ¶¶ 3-6, Burke provides no admissible
> evidence of this, let alone evidence tending to show that the elements of any

14

> RICO predicates were satisfied by prior changes in the ownership of the Kenmore.  Burke highlights the transcript of an administrative hearing in which defendants were cited for performing electrical work without a permit, see Hearing Transcript at 3, but the code violations at issue there are not predicate offenses listed within 18 U.S.C. § 1961(1), nor are they equivalents of the listed offenses.  Accordingly, summary judgment must be granted to defendants as to any RICO claims.

(Id.)

In objecting to Judge Gorenstein's recommendation concerning his RICO claim, Burke argues – as he has throughout this litigation – that the Kenmore Defendants "concoct[ed] a knowingly false, malicious 'diagnosis'" of "delusional disorder" and transmitted that diagnosis to the NYCTA to "get [Burke] terminated from employment, and additionally seek [his] 'incarceration' under [New York's Mental Hygiene law]."  (Pltf. Obj. (Dkt.  No. 192) at 7-12, 14)  Burke asserts that "[e]ither Ms. Rossi, or Ms. Mattimore, or some other HSI employee involved in said conspiracy, called, or emailed [the NYCTA]" to convey this false diagnosis and that this conduct constitutes the RICO predicates of mail and wire fraud.  (Id. at 11-12)  Burke makes similar allegations as to the Kenmore Defendants' alleged transmission of the fraudulent diagnosis to the New York City Employees' Retirement System ("NYCERS"), which allegedly resulted in Burke being denied a "'9/11' pension."  (Id. at 11-15 ("The false/fraudulent 'medical documents' from Kenmore/Bellevue were the clear and sole reason for the denial . . . . If they did not concoct the ongoing Wire/Mail Fraud . . . the knowing falsehood/fraud would not have been sent to NYCERS (mail fraud).")

Burke made these same arguments in opposing the Kenmore Defendants' motion for summary judgment.  (See Pltf. Opp. (Dkt. No. 184) at 21-22, 23-26)  Accordingly, the Court reviews these objections for clear error.  IndyMac Bank, F.S.B., 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008).

Having reviewed those portions of the R&R addressing Burke's RICO claim, this Court finds no clear error in Judge Gorenstein's conclusion that Burke's allegations regarding the Kenmore Defendants' alleged transmission of his medical information to the NYCTA or to the NYCERS do not make out a RICO claim.  There is no evidence, for example, that the Kenmore Defendants transmitted Burke's medical information to either the NYCTA or to NYCERS.

Burke argues, however, that alleged burglaries of his apartment constitute predicates for his civil RICO claim.  (See Pltf. Obj. (Dkt. No. 192) at  15-16; see also Am. Cmplt. (Dkt. No. 38) ¶ 32 & n.11 (citing burglaries of Burke's apartment and thefts of property in his apartment allegedly committed by the Kenmore Defendants or Verizon); id. at 49 (invoice of $24,925 from Burke to HSI for "[t]heft of escrow funds . . . [n]ot including thefts of I.D. legal documents, photographs, other evidence, etc."))

Burglary is not a predicate crime for a RICO violation, however.  See 18 U.S.C. § 1961(1); see also  United States v. Carrillo, 229 F.3d 177, 185 (2d Cir. 2000) ("RICO  includes in its definition of prohibited racketeering activity only acts prohibited by enumerated federal statutes or 'any act or threat involving murder, kidnapping, [gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical] . . . which is chargeable under State law and punishable by imprisonment for more than one year.'") (quoting 18 U.S.C. § 1961(1)) (emphasis in Carrillo).

Even if burglary were a predicate offense for purposes of a RICO claim, Burke has once again not offered any evidence that these burglaries actually occurred, much less that they were committed by the Kenmore Defendants.  While "a verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, . . . has the effect of an affidavit and may be relied on to oppose summary judgment. . . . a genuine issue [is not] created

merely by the presentation of assertions that are conclusory." Patterson v. Cnty. of Oneida, N.Y.,

375 F.3d 206, 219 (2d Cir. 2004)  (citations omitted).  Burke's objections repeat the same

uncorroborated conclusory assertions found in his pleadings that the Kenmore Defendants

burglarized his apartment.  Because Burke has proffered no evidence that these alleged burglaries

took place or that they were committed by the Kenmore Defendants, the Kenmore Defendants

are entitled to summary judgment on his RICO claim.  See Hicks, 593 F.3d at 166 ("'[A] party

may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a

motion for summary judgment. . . . [M]ere conclusory allegations or denials  . . . cannot by

themselves create a genuine issue of material fact where none would otherwise exist.'") (quoting

Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Finally, Burke objects to Judge Gorenstein's finding that the building code

violations that are the subject of the OATH hearing transcript do not constitute predicate offenses

for purposes of Burke's RICO claim.  (Pltf. Obj. (Dkt. No. 192) at 17-18 (citing R&R (Dkt. No.

190) at 12)  Burke argues that the hearing transcript was submitted not as evidence of building

code violations, but rather to demonstrate that the Kenmore Defendants, "through photoshop, or

other means, . . . submit[ted] not one, but two knowingly false 'backdated' alleged permits, dated

2017."  (Id.)  According to Burke, this alleged conduct amounts to "obstruction of justice,"

which is a predicate offense under the RICO statute.  (Id.)

Obstruction of an OATH proceeding, however, does not constitute a RICO

predicate offense.  Section 1961(1)'s list of predicate offenses includes "any act which is

indictable under . . . title 18, United States Code: . . . section 1503 (relating to obstruction of

justice), section 1510 (relating to obstruction of criminal investigations), [and] section 1511

(relating to the obstruction of State or local law enforcement)."  18 U.S.C. § 1961(1).  Sections

1503 and 1510 address obstruction of federal judicial proceedings and obstruction of federal criminal investigations, however.  18 U.S.C. § 1503 ("Whoever corruptly, . . . endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States . . . or impedes . . . the due administration of justice, shall be [guilty of a crime.]"); id. § 1510 ("Whoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States . . . shall be [guilty of a crime.]").  And 18 U.S.C. § 1511 makes it illegal to conspire "to obstruct the enforcement of the criminal laws of a State or political subdivision thereof, with the intent to facilitate an illegal gambling business."  18 U.S.C. § 1511.  OATH hearings are New York City administrative proceedings; they do not constitute federal proceedings nor do they involve criminal matters, whether federal or state.   See About OATH, https://www.nyc.gov/site/oath/about/about-oath.page  ("[OATH] is the City's central, independent administrative law court. . . . Its caseload includes employee discipline and disability hearings for civil servants, Conflicts of Interest Board cases, proceedings related to the retention of seized vehicles by the police, City-issued license and regulatory enforcement, real estate, zoning and loft law violations, City contract disputes and human rights violations under the City Human Rights Law.") (last visited Mar. 15, 2023).  Accordingly, obstruction of an OATH proceeding does not fall within the predicate offenses listed in Section 1961(1).

Even if obstruction of an OATH administrative proceeding could constitute a RICO predicate, Burke has not offered evidence sufficient to demonstrate that such obstruction took place.

The OATH hearing concerns two summonses issued to Kenmore Associates, L.P., one of the Kenmore Defendants, for work allegedly completed without a permit.  As to one of

18

the summonses, Kenmore's counsel submitted "a copy of a Permit . . . which lists [work allegedly completed without a permit]." (Pltf. Opp., Ex. F (Dkt. No. 184) at 46)  The City's counsel responded that the permit's "date of issuance . . . is 09/05/2017, before the Violation [] was even written, or existed . . . [and demanded] an explanation for that." (Id.)  The hearing officer did not make a finding as to the validity of the permit. (Id. at 46-53)  Even assuming that the permit was invalid, there is no evidence that it was forged or fraudulent.  See Hicks, 593 F.3d at 166.

Accordingly, this Court will adopt Judge Gorenstein's recommendation that the Kenmore Defendants be granted summary judgment on Burke's RICO claim.

### 3.    Recommendations as to Which There Are No Objections

Judge Gorenstein recommends that the Kenmore Defendants be granted summary judgment on Burke's claims under the False Claims Act, HIPAA, and the ADA, and that this Court decline to exercise supplemental jurisdiction over his state law claims.  No party has objected to these recommendations.  Accordingly, they will be reviewed solely for clear error. See Gilmore, 2011 WL 611826 at *1.

Judge Gorenstein recommends that the Kenmore Defendants be granted summary judgment on Burke's False Claims Act claim, because that statute "does not permit a pro se litigant to bring qui tam claims." (R&R (Dkt. No. 190) at 12-13 (citing United States ex rel. Mergent Servs. V. Flaherty, 540 F.3d 89, 93 (2d Cir. 2008) and Klein v. City of New York, 2012 WL 546786, at *5 (S.D.N.Y. Feb. 21, 2012)))  This Court finds no clear error in Judge Gorenstein's determination.

As to Burke's HIPAA claim, Judge Gorenstein notes that there is no evidence that the Kenmore Defendants disseminated his confidential medical information. (Id. at 13)  In any event, "'HIPAA confers no private cause of action, express or implied' . . . [and] instead

19

delegates enforcement authority to the Secretary of Health and Human Services."  (Id. at 13-14

(quoting Meadows v. United Servs., Inc., 963 F.3d 240, 244 (2d Cir. 2020) and citing 42 U.S.C.

§§ 1320d-3, 1320d-5))  This Court finds no error in Judge Gorenstein's determination.

As to Burke's ADA claim, Judge Gorenstein first notes that the "ADA 'consists of

three parts:  Title I, 42 U.S.C. §§ 12111-17, which prohibits discrimination in employment; Title

II, 42 U.S.C. §§ 12131-65, which prohibits discrimination by public entities; and Title III, 42

U.S.C. §§ 12181-89, which prohibits discrimination in access to public accommodations.'" (Id.

at 14 (quoting DeJesus v. Rudolph, 2019 WL 5209599, at *2 (S.D.N.Y. Oct. 11, 2019)))

Judge Gorenstein concludes that Burke is not invoking Title I, because he has not

alleged that the Kenmore Defendants are his employers.  (Id.)  Nor does Burke allege a violation

of Title II, because there is no evidence that the Kenmore Defendants are public entities or that

Burke receives federal benefits.  Indeed, the Kenmore Defendants have offered "evidence that

[Burke's] Section 8 benefits were terminated in 2004."  (Id.)

Accordingly, Judge Gorenstein infers that Burke is invoking Title III, which

requires a plaintiff to show that "'(1) he or she is disabled within the meaning of the ADA; (2)

that the defendants own, lease, or operate a place of public accommodation; and (3) that the

defendants discriminated against the plaintiff within the meaning of the ADA.'"  (Id. (quoting

Roberts v. Royal Atl. Corp., 542 F.3d 363, 368 (2d Cir. 2008)))

Judge Gorenstein concludes that Burke's ADA claims must be dismissed because

he has not shown that the "Kenmore is a place of public accommodation."  (Id. at 14-15)  "The

ADA defines 'public accommodation' to include most 'inn[s], hotel[s], motel[s], or other place[s]

of lodging.'"  (Id. at 15 (quoting 42 U.S.C. § 12181(7)(A)))  However, "the term 'public

accommodation' 'does not include residential facilities or apartment buildings.'"  (Id. (quoting

<u>Mazzocchi v. Windsor Owners Corp.</u>, 2012 WL 3288240, at *7 (S.D.N.Y. Aug. 6, 2012)))  Judge

Gorenstein also notes that contracting with government entities to provide low income housing

"does not render the Kenmore a public accommodation."  (<u>Id.</u> (citing <u>Rappo v. 94-11 59th Ave.</u>

<u>Corp.</u>, 2011 WL 5873025, at *2 (E.D.N.Y. Nov. 21, 2011) (private residential complex was not a

public accommodation, even though the complex was used for publicly subsidized housing)))

This Court finds no error in Judge Gorenstein's determination.

Finally, Judge Gorenstein recommends that this Court not exercise supplemental

jurisdiction over Burke's state law claims:

> [I]n the usual case in which all federal-law claims are eliminated before trial, the
> balance of factors to be considered under the pendent jurisdiction doctrine,
> judicial economy, convenience, fairness, and comity will point toward declining
> to exercise jurisdiction over the remaining state-law claims.

(R&R (Dkt. No. 190) at 16 (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7

(1988) (quotation marks omitted)))  This Court agrees with Judge Gorenstein's recommendation.

Accordingly, this Court will adopt the R&R's recommendations that the Kenmore

Defendants' motion for summary judgment be granted as to Burke's claims under the False

Claims Act, HIPAA, and the ADA, and that this Court decline to exercise supplement jurisdiction

over Burke's pendent state law claims.

## <u>CONCLUSION</u>

For the reasons stated above, the Kenmore Defendants' motion for summary

judgment is granted.  Because all of Burke's claims against named Defendants have been

dismissed, the Clerk of Court is directed to close this case.  The Clerk of Court is also directed to

mail a copy of this order to pro se Plaintiff.

Dated:  New York, New York
        March 16, 2023

                                        SO ORDERED.

                                        _____
                                        Paul G. Gardephe
                                        United States District Judge